PER CURIAM.
In our opinion of March 17,1978 we made provision that the City Council, if serious, receive a prompt judicial evaluation of its plan to renovate the Charles St. Jail. We contemplated an expeditious appeal. We reaffirmed our insistence on a “definite commitment to make available sufficient appropriations for a constitutionally adequate facility to be constructed by a definite date” as a prerequisite to permitting continued use of the Charles St. Jail after October 2, 1978.
The City Council, on May 1, 1978, endorsed and filed the Moyer Plan, which, including site, architect’s fee, and a fund for contingencies, costs out at $15,500,000. On April 26, it had passed at its first reading a loan order of $12,000,000 toward funding this plan. On May 2, the district court ruled that it would not schedule a hearing on the constitutional adequacy of the Plan since the Council had not first voted a loan order for the full anticipated cost. The Council immediately appealed. On May 17 the loan order failed of passage by one vote in its second reading.[1] On June 7, the eve of oral argument on the appeal from the district court’s order of May 2, the Council passed a resolution committing itself (1) to vote an amount not less than $12,000,000 if the district court approves the Moyer Plan and orders it implemented and adequately funded; and (2) not to appeal such an order if it “does not specify an unreasonably large amount to be appropriated.”
We were informed at argument that the positions of the parties are as follows:

The Council

The resolution of June 7, above noted, is now final. While one member has been in possession for some three months of a plan (Nashua Street) for a dual facility, pre *763 ferred by the Mayor and prepared by the Public Facilities Department, counsel for ■the Council has just learned of it and will ask that it be presented to the full membership. Five members assertedly prefer the Moyer Plan; four prefer Nashua Street; but, so we are told, one of the four will vote for the Moyer Plan if ordered to do so. In response to our inquiry as to what the City Council’s position would be assuming the Moyer Plan were to be held constitutionally adequate if amended to incorporate changes substantially increasing its cost, counsel has represented that the real issue is site, not funding, and that he did not doubt that the Council would vote such funds as the court found necessary.
Plaintiffs — Inmates
Plaintiffs feel that the district court was not in error in refusing to consider the Moyer Plan as of May 2, but feel that the June 7 Council resolution now justifies a judicial evaluation. They also feel that the Nashua Street Plan, preferred by the May- or, should be considered. If this proves inadequate, they hope the Mayor will change his position.

The Mayor

Counsel for the Mayor does not concede the adequacy of the Moyer Plan and refers to an analysis pointing to a figure of $18.2 million for its realistic funding. An architect has been hired to refine the Nashua Street Plan. A June 22 hearing has been scheduled on home rule petition legislation filed by the Mayor, to enable the city to exchange its land on Deer Island for state land on Nashua Street.[2] It is probable that the Massachusetts legislature, whose approval will be necessary to the land swap, will have prorogued before all prerequisites to the swap can be satisfied. In terms of meeting our “definite commitment” requirement by October 2, counsel saw hope in “viable real progress in the next couple of months”.

The Commissioner of Corrections

Counsel for the Commissioner felt that the Moyer Plan was not complete enough to reveal a probable total cost. He referred to the possibility that the roof of the jail, hitherto assumed to be adequate, may not be. He would, however, as required by statute, review any plan. He forcefully pointed out that if no permanent plan has been approved by October 2, the facilities available to him will become overcrowded, and the burden of relocating and maintaining the present inmates of Charles St. will be a costly one. The City Council, he stressed, must be prepared to pay such costs.
This, then, is the unpromising picture less than four months before the date of closing: A Council divided within its numbers but making more of a commitment to the Moyer Plan, both as to initial amount and as to ordered increases; a Mayor still adamantly opposed to the Moyer Plan and backing a more ambitious plan requiring a complex action joined in by both city and state; a Commissioner skeptical of the Moyer Plan; and plaintiffs willing to see both the Moyer and Nashua Street Plans assayed.
Against his background of sharply disparate positions taken by the political leadership, we have no choice but to affirm the May 2 decision of the district court. At the time of the court’s decision not only had the Council set a fixed ceiling to its funding of the Moyer Plan, but the voting process was only half completed. As we have seen, the resolution was later to be voted down. It was a limited and potential, not actual, commitment.
This, normally, would be all we should say. But problems such as this are not of the common run. The stakes in terms of the fates of individuals, the responsibilities *764 and roles of different arms of government, the impact on the taxpayers and citizens, the very functioning of important institutions of government are so high that every opportunity to identify the narrowing range of choices available to decisionmakers should be utilized.
It is obvious that a significant change of position on the part of the Council has taken place since May 2 — in terms of a commitment, now final, to appropriate funds in addition to $12,000,000 if the district court were so to order. The commitment not to appeal the order is, of course, hedged by the proviso that the amount specified not be “unreasonably large”. We interpret this as merely a prudential reserving of the right to challenge by appeal the magnitude of expenditure implicit in a court approved plan; the Council is not signing a blank check in advance but is committing itself to such amounts as ultimately may in the course of judicial review be deemed as not unreasonably large. So viewed, this is a meaningful commitment.
We leave it to the district court, which is much closer to this complicated tug-of-war between power centers, to take such action as it deems now appropriate. We observe, without intending to tie the court’s hands, that any long range plan advanced in good faith with facially reasonable claims to constitutional adequacy and assurance of implementation may with profit be judicially scrutinized. Whether the result be to identify a plan that will pass constitutional muster or to expose a plan as fatally defective, there will be a benefit in clarifying the choice to be made by elected officials. Moreover, assuming the emergence of a plan found to meet constitutional standards, there would seem to be considerable advantage in judicial determination, at as early a date as possible, of the adequacy of the commitment to support such a plan or of the additional commitment which must be forthcoming to achieve adequacy.
If a plan of constitutional adequacy and assured support has not emerged by early fall, the options of all concerned will have shrunk. We have taken all possible pains to give notice of the October 2 deadline. Should there then be no such long range constitutional solution as to justify continued interim use of the Charles St. Jail, the city must be prepared to finance a lengthy, unproductive, improvised, and excessively costly custody for its pretrial detainees.

Affirmed.

. This vote also apparently included the undertaking: “if the Moyer Plan is approved by the Court and if the Mayor has given his approval to the loan order and if it appears that implementation of the Moyer Plan will cost more than $12,000,000, the Council will vote the necessary funds so that the Charles Street pretrial detention center will be brought up to constitutional standards.” This vote passed by the inadequate majority of 5 to 4, one councillor, Flynn, having changed his position.

. The Mayor points out that fifteen million dollars in federal funds would be available to replace the correction facilities at Deer Island, since the site would be available for mandated sewage treatment. The receipt of these funds would not seem to be affected by a decision to rebuild the Charles St. Jail or to create a dual facility. In any event, it is not relevant to issues before us.