**MORRISON–KNUDSEN COMPANY, INC., Plaintiff,**

v.

**DEPARTMENT OF THE ARMY OF the UNITED STATES, et al., Defendants.**

Civ. A. No. 83–2835.

United States District Court, District of Columbia.

May 3, 1984.

Loren Kieve, Robert D. Wallick, Jeffrey P. Moran, Washington, D.C., for plaintiff.

John H.E. Bayly, Jr., Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM

GESELL, District Judge.

This Freedom of Information Act (FOIA) complaint involves the applicability of Exemption 5[1] to certain documents being withheld by the Army Command at Fort Benning, Georgia. Cross-motions for summary judgment were denied and an expedited evidentiary hearing to clarify disputed material facts was held on March 30, 1984.

Several witnesses were heard, numerous exhibits received,[2] and the issues have been thoroughly briefed. The exemption claimed is sustained by reason of the following findings of fact and conclusions of law.

After full administrative review, Morrison-Knudsen Company, Inc. (M–K) was denied the five disputed documents on May 12, 1983, and filed its complaint herein on September 26, 1983. At the time release of the documents was denied, M–K was advised that the government would soon solicit offers and conduct negotiations with private business pursuant to OMB Circular A–76 (Revised) (Plf Exs. 6, 7) for performance of the activities currently being conducted by the Army's Directorate of Engineering and Housing at Fort Benning. *See* Plf. Exs. 3, 5. The Army is now expected to issue invitations within a month for competitive bids on a cost-plus-work-fee negotiated procurement for performance of the extensive and varied functions involved. M–K and the Army are prospective bidders to undertake the work.

Under the A–76 program private firms must compete in the bidding process with the Army's own sealed "bid" of its estimate of the cost of continuing to perform the work involved in-house. Fort Benning is now in the process of preparing its bid, which will be based on its own historical costs with possible adjustments in some relatively minor respects to account for future anticipated cost savings. Much of this historical cost data can be determined from the documents M–K seeks, and the Army will rely on these documents to a significant degree in preparing its bid.[3]

---

1. Under 5 U.S.C. § 552(b)(5), the government is not required to release under FOIA "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."

2. At trial the Court reserved ruling on the admissibility of Plf. Exs. 24, 25, and 26. The Court now rules that this testimony is admissible under F.R.Civ.P. 32(a) and Fed.R.Evid. 801(d)(2)(D). Pursuant to F.R.Civ.P. 32(a)(4) and Fed.R.Evid. 106, defendant was offered an

opportunity by post-trial submission to supplement the deposition excerpts and chose not to do so.

3. Examples of the type of documents sought were presented in defendants' exhibits A through E. These documents included a "Schedule X" reflecting manpower distribution by staffing and workload; "Table of Distribution and Allowance (TDA)" reflecting staffing of functions and salary costs; "Unconstrained Requirements Reports (URR)" listing required maintenance and repairs with accompanying

The Army intends to release the documents sought by M–K to all bidders *after* bids are opened and an award made. M–K wants the documents released now. The Army argues that release at this time would enable M–K to anticipate the Army's bid fairly closely and would thus have an adverse effect upon the procurement and the benefits expected from the competitive process. Under such circumstances, the Army contends, Exemption 5 permits release of the documents to be delayed.

■ The application of Exemption 5 has most recently been discussed by the Supreme Court in *United States v. Weber Aircraft Corp.,* —— U.S. ——, 104 S.Ct. 1488, 79 L.Ed.2d 814 (1984). The Court made clear that "Exemption 5 simply incorporates civil discovery privileges," and "withholds from a member of the public documents which a private party could not discover in litigation with the agency." —— U.S. at ——, 104 S.Ct. at 1492. "The test under Exemption 5 is whether the documents would be 'routinely' or 'normally' disclosed upon a showing of relevance." *Id.* (quoting *FTC v. Grolier, Inc.,* 462 U.S. 19, 103 S.Ct. 2209, 2214, 76 L.Ed.2d 387 (1983)).

■ Under F.R.Civ.P. 26(c)(7), "a trade secret or other confidential research, development, or commercial information" can be protected from discovery. In the context of a government procurement program, "[t]he theory behind a privilege for confidential commercial information generated in the process of awarding a [government] contract ... is ... that the Government will be placed at a competitive disadvantage or that consummation of the contract may be endangered." *Federal Open Market Committee v. Merrill,* 443 U.S. 340, 360, 99 S.Ct. 2800, 2812, 61 L.Ed.2d 587 (1979). If the government documents sought in the FOIA request "contain sensitive information not otherwise available, and if immediate release of these [documents] would significantly harm the Government's monetary functions or commercial interests, than a slight delay in [release] ... would be permitted under Exemption 5." 443 U.S. at 363, 99 S.Ct. at 2813.

The Court must thus determine whether the documents sought "contain sensitive information not otherwise available" which would "significantly harm" the A–76 program if released prior to submission of bids.

The documents at issue are not classified. They have been regularly prepared as required by Army-wide regulations for many years, and have been distributed at the managerial level at Fort Benning on a "need to know" basis for official use. The practice at other bases has varied as far as release of the material to the public is concerned, and indeed different services within the military apparently have differing practices in this regard. Within the Army discretion to withhold or release this information is currently left to those at the base level.[4] Some Army bases apparently have released some or all of this information; others have not. At Fort Benning the documents at issue have not been released to the general public.[5]

■ Although the Army's practice concerning release of these types of documents has not been consistent service-wide, the Court concludes that the particular information sought in this action has not been made "otherwise available." Release of similar documents at other bases is of little relevance. The actual data contained

---

cost estimates; "Annual Work Plans (AWP)" giving employee and cost data; and "Backlog of Maintenance and Repair (BEMAR)," a table of maintenance requirements performed in-house, contracted out, and left undone.

**4.** The Army has recently initiated development of a regulation to govern withholding of this information, but no regulation presently prohibits or authorizes release.

**5.** Oral testimony presented at the hearing established that on occasion portions of older versions of the documents sought here were posted on office bulletin boards where they might be seen by those with access to the base. Such apparently unauthorized posting of now outdated material, however, does not equate to release of current information which the government has obviously kept confidential.

varies from base to base. Moreover, since it is the pendency of an A–76 Program bid which *creates* the reason for temporarily withholding these documents, the fact that they have been released at bases where no such program is in immediate contemplation is neither surprising nor relevant.

Even with regard to only those bases where such a program might be in the offing, plaintiff has offered no explanation for why the Army must reach the same determination concerning disclosure in every instance. Indeed, consideration of the concerns enunciated in *Merrill* might lead to differing conclusions in different situations. In one instance the information might already be generally known through other means, or its disclosure might do little or nothing to compromise the government's bid given the specific circumstances of the particular A–76 bid at issue.[6] In other instances, however, release of the documents sought might place previously unavailable information in the hands of bidders who could use it to the competitive disadvantage of the government's in-house bid, in which case the government would have a legitimate reason for withholding those documents. Release of similar documents at bases other than Fort Benning thus cannot serve to constitute "release" of documents relating to Fort Benning, and since the particular documents at Fort Benning have not themselves been made "otherwise available," the withholding of those documents is proper if release would place the government at a competitive disadvantage or endanger the procurement process in some other manner.

While the papers being withheld will not reveal the precise bid to be made by the Army against M–K's prospective bid, the evidence shows that they will enable an informed bidder such as M–K[7] to make a closer approximation than would be possible on the basis of the information to be released with the bid invitation and other available data. *See Timken Co. v. United States Customs Service*, 491 F.Supp. 557, 559 (D.D.C.1980). The Court therefore accepts the Army's view that in this instance release may not only chill competition and place the Army at a "competitive disadvantage" in "bidding" to continue doing the work in-house, but might also discourage commercial firms from taking the initiative to come forward with more innovative techniques for cutting costs in the hope of underbidding a more uncertain Army "bid." The Army has thus met its burden in this particular instance of demonstrating sound reasons to protect the commercial information being sought by M–K.

■ Under the Rule 26(c)(7) standard approved by the Supreme Court a trial court has discretion to develop procedures that will protect confidential information as far as feasible consistent with the need to ensure fairness to all parties. Absolute protection of commercial data that will lead to relevant evidence is rare; usually the Court will control the manner or timing of the disclosure. If, on the eve of a competitive bidding, a party sought access to internal commercial papers of a competing bidder which would enable it to determine more closely how the competitor might be expected to bid, surely a Court in the exercise of its discretion would at the very least seek to delay discovery until potential harm to the competitive bidding process had passed.

The same considerations lead the Court to conclude that in this case a temporary delay in release of the documents is appropriate. Here the records sought by M–K will soon be made public once bids are filed under seal and an award made. Thus the ultimate purpose of public disclosure envisioned by FOIA can be achieved while the agency's need to protect its commercial information for a short period is recognized. Temporary delay of disclosure is therefore the proper course.

The Court has heeded the Supreme Court's admonition in *Merrill* that a claim

---

6. In this regard see Plf. Ex. 19 ("*In this case,* the Army has decided these factors [enunciated in *Merrill*] do not justify withholding the information." [emphasis added]).

7. M–K, like some other bidders, is aided by a former government marketing officer versed in Army policy, objectives and internal procedures.

of commercial privilege based on anything other than executive privilege or the attorney-client privilege must be viewed "with caution" when arising in the context of Exemption 5. *Merrill*, 443 U.S. at 355, 99 S.Ct. at 2809. However, given the long tradition of carefully maintained fairness in competitive government procurement programs, the use of FOIA to unsettle well-established procedures governed by a comprehensive regulatory scheme must also be viewed not only "with caution" but with concern. Premature disclosure could, in the long run, discourage documentation of internal cost-related data and thus impede "frank and open discussion and hence efficient governmental operations." *Weber Aircraft*, —— U.S. at ——, 104 S.Ct. at 1494. More immediately, it will place the Army at a competitive disadvantage with respect to the Current A–76 if the information is released before bids are opened and an award made. If the Army does not proceed expeditiously with the competitive bid invitation, M–K may seek to reopen.

Nothing in the foregoing shall, of course, prevent the contracting officer from releasing any data in these papers to all prospective bidders should he determine such to be appropriate.

The Clerk of Court shall enter judgment for defendant.