**PAYNE ENTERPRISES,
INC., Appellant,**

v.

**UNITED STATES of America, et al.**

No. 87–5002.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 4, 1987.

Decided Jan. 19, 1988.

Before ROBINSON, EDWARDS and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

Concurring statement filed by Circuit Judge D.H. GINSBURG.

HARRY T. EDWARDS, Circuit Judge:

This case raises issues of mootness, ripeness, and the appropriateness of equitable relief for the tardy release of bid abstracts by the Air Force in response to Freedom of Information Act ("FOIA") requests by Payne Enterprises, Inc. ("Payne"). Beginning in March 1985, officers at Air Force Logistics Command ("AFLC") bases refused to supply Payne with copies of bid abstracts when, in their judgment, competition for contracts was so limited that release of the abstracts might result in higher prices in the future. The base officers perfunctorily invoked FOIA Exemptions 4 and 5, 5 U.S.C. § 552(b)(4), (5) (1982), in justifying their denials. Payne appealed these denials to the Secretary of the Air Force, who without exception ordered disclosure because neither FOIA exemption applied to the material Payne had requested. Nevertheless, AFLC officers continued to refuse Payne's FOIA requests for bid abstracts, thereby necessitating further—and invariably successful—administrative appeals. The delay occasioned by these appeals injured Payne's business by frustrating its clients' desire for the prompt delivery of information on contract bids.

In July 1986, Payne filed suit in the District Court, under 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1361 (mandamus), 28 U.S.C. § 1651 (All Writs Act) and 5 U.S.C. § 552 (FOIA), challenging the Air Force's practice of unjustified delay and seeking declaratory and injunctive relief to compel the defendants to release abstracts of negotiated acquisitions.[1]

Robert E. Lieblich, with whom William J. Spriggs and John Linarelli, Washington, D.C., were on the brief, for appellant.

Margaret A. Irving, Attorney–Advisor, Office of Information and Privacy, U.S. Dept. of Justice, with whom Joseph E. diGenova, U.S. Atty., and Royce C. Lamberth, R. Craig Lawrence and Michael J. Ryan, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellees.

1. Payne's invocation of sections 1331, 1361 and 1651 obviously contemplates a claim of "unreasonable agency delay." *See Telecommunications Research & Action Center v. FCC,* 750 F.2d 70, 79 (D.C.Cir.1984) (*"TRAC"*). In *TRAC,* we held that the court of appeals had exclusive jurisdiction over claims of "unreasonable delay" in the performance of a discretionary duty in circumstances where Congress has vested the appellate court with exclusive jurisdiction over

Payne's suit was dismissed, however, on the ground that it had received all of the material it had requested through the administrative appeals procedure specified by the FOIA. The District Court concluded that the Secretary of the Air Force's failure to compel AFLC bases to comply with the FOIA in ruling on Payne's initial requests did not warrant judicial intervention. After Payne filed a notice of appeal with this court, the officers at AFLC bases finally began to grant Payne's requests for bid abstracts even where there existed limited competition for contracts. None of Payne's requests have been denied since January 1987. In addition, the Air Force has conceded that Exemptions 4 and 5 do not apply to the material Payne desires, and an Air Force officer has promised release of the abstracts by AFLC bases in the future.

■ We hold that the claimed voluntary cessation of the Air Force practice of refusing to release bid abstracts (absent an appeal to the Secretary of the Air Force) does not render moot Payne's challenge to the Air Force's practice of unjustified delay. We also hold that Payne's challenge is ripe for adjudication. Because the Air Force has admitted that the information initially denied Payne does not fall within FOIA Exemptions 4 and 5, and because the repeated delays Payne suffered in securing that information pursuant to an Air Force practice constitute clear violations of the FOIA, we reverse the District Court's dismissal and remand with instructions to afford Payne declaratory relief and to consider the propriety of injunctive relief.

review of final agency orders. *Id.* at 77; *see Sierra Club v. Thomas,* 828 F.2d 783, 787–92 (D.C.Cir.1987). In this case, however, the claim of "unreasonable delay" was properly raised in the District Court in the first instance because this court does not have initial or exclusive jurisdiction over final agency actions under the FOIA.

In addition to the claim of "unreasonable delay," Payne's complaint also invokes section 1331 to raise a demand for information under the FOIA and a challenge to an allegedly unlawful agency practice.

**2.** Government regulations require that unsuccessful bidders for negotiated contracts be in-

## I. BACKGROUND

Payne sells information and advice about Government contracts to prospective contractors. Payne obtains much of that information through FOIA requests. From 1970 through March 1985, Payne regularly requested from AFLC bases, and routinely received, copies of bid abstracts listing the offerors' names and aggregate offer prices for negotiated contracts once those contracts had been awarded. Starting in March 1985, officers at several AFLC bases refused to supply Payne with copies of bid abstracts prepared in connection with contracts for which there was limited competition.[2] These refusals were apparently prompted by an AFLC policy letter that reads in part:

When the release of the negotiated contract abstracts will reveal to the successful offeror that there is (a) no other offeror, or (b) only one other offeror with a large price disparity between the two offerors, we believe that the successful offeror, knowing the extent of the limited competition, would naturally be compelled to, and most likely would, increase the prices in future acquisition [sic] for the same item, thereby prejudicing the Government's interest.

Letter from Steven Thompson to Major General Charles McDonald (June 20, 1986), *reprinted in* Appendix ("App.") 21 (quoting AFLC policy letter). In denying Payne's requests for bid abstracts when the foregoing conditions were met, the AFLC officers relied on FOIA Exemptions 4 and 5[3] as legal rationales, although they

formed of the contract price and the recipient's identity. 48 C.F.R. § 15.1001(c)(1) (1986). Information regarding *unsuccessful* bids, however, need not be disclosed pursuant to Government regulations.

**3.** Exemption 4 applies to "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). Exemption 5 encapsulates the so-called "deliberative process" privilege; by its terms it encompasses "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).

never stated precisely why they thought these exemptions were applicable.[4]

Payne appealed the denials to the Secretary of the Air Force. Without exception, the Secretary's Office released the bid abstracts Payne had requested. It appears that the Secretary concluded that release of the information would not necessarily result in higher prices for the Government, because unsuccessful bidders would have an incentive to lower their bids when competing for later contracts and because the Air Force could refuse to grant large price increases in negotiated contracts that could not be justified by corresponding increases in contractors' costs.[5] Whether for this reason alone or for other reasons as well, the Secretary determined that Exemptions 4 and 5 did not apply to the information Payne was seeking. Indeed, the Secretary's Office expressed some irritation over the "excessive" number of FOIA appeals attributable to the stubborn refusal of AFLC officers to release bid abstracts.[6] Advice to the officers from the Secretary's staff made it clear that the officers' position was wholly unjustified:

> The most recent denials within AFLC contain broad general conclusions that release would be harmful to the deliberative process within the Air Force and would be inimical to the competitive in-

---

**4.** In its brief, the Government states that if the AFLC officers "had been able to provide sufficient evidence indicating commercial harm to the government, the [Secretary of the Air Force] would have continued to withhold this type of abstract, in accordance with well-established case law." *See* Brief for Appellees at 5 n. 4 (citing *Federal Open Mkt. Comm. v. Merrill*, 443 U.S. 340, 99 S.Ct. 2800, 61 L.Ed.2d 587 (1979); *Morrison–Knudsen Co. v. Department of the Army*, 595 F.Supp. 352 (D.D.C.1984), aff'd, 762 F.2d 138 (D.C.Cir.1985); *Government Land Bank v. General Servs. Admin.*, 671 F.2d 663 (1st Cir.1982)). Not surprisingly, the Government has not pressed this point, for *none* of the three cases it cites discusses the applicability of Exemption 4, and *none* of them supports a claim that information of the sort here at issue can be withheld under Exemption 5 *after* a contract has been awarded. Indeed, if anything, those cases *reject* the Government's claim.

In *Federal Open Market Committee v. Merrill*, 443 U.S. 340, 99 S.Ct. 2800, 61 L.Ed.2d 587 (1979), the Supreme Court criticized the view that an agency may "withhold any memoranda ... whenever the agency concluded that disclosure would not promote the 'efficiency' of its operations or otherwise would not be in the 'public interest.'" *Id.* at 354, 99 S.Ct. at 2809. This view, the Court said, "would leave little, if anything, to FOIA's requirement of prompt disclosure, and would run counter to Congress' repeated rejection of any interpretation of the FOIA which would allow an agency to withhold information on the basis of some vague 'public interest' standard." *Id.* at 354, 99 S.Ct. at 2809 (citations omitted). Addressing the distinction between the protection that confidential commercial information enjoys under Exemption 5 and material protected by executive privilege, the Court further stated:

> The theory behind a privilege for confidential commercial information generated in the process of awarding a contract ... is not that the flow of advice may be hampered, but that the Government will be placed at a competitive

disadvantage or that the consummation of the contract may be endangered. Consequently, *the rationale for protecting such information expires as soon as the contract is awarded* or the offer withdrawn.

*Id.* at 360, 99 S.Ct. at 2812 (emphasis added). The Air Force can hardly rely on this decision to vindicate its refusal to release bid abstracts *after* a contract has been awarded.

The District Court's holding in *Morrison–Knudsen Company v. Department of the Army*, 595 F.Supp. 352 (D.D.C.1984), aff'd, 762 F.2d 138 (D.C.Cir.1985), also affords the Government no solace. In that case, the court held that documents that would reveal the amount of the Army's own sealed "bid" for an Army contract to provide certain services that private contractors could also bid to supply may be withheld under Exemption 5. The court emphasized, however, that those documents would have to be released once the contract was awarded. *See* 595 F.Supp. at 355. *Morrison–Knudsen* therefore contradicts, rather than sustains, the Government's assertion in its brief.

*Government Land Bank v. General Services Administration*, 671 F.2d 663 (1st Cir.1982), offers no assistance either. In upholding the Government's assertion that Exemption 5 permitted it to postpone disclosure of its appraisal of the value of land the Government was offering for sale until after the sale had been made, the First Circuit relied upon those portions of the Supreme Court's opinion in *Merrill* quoted above. The First Circuit in no way suggested that release of the appraisal could be deferred beyond the date of sale. Hence, the Air Force cannot invoke this decision to justify its refusal to disclose bid information once a contract has been made.

**5.** *See* Letter from Steven Thompson to Major General Charles McDonald (June 20, 1986), App. 21.

**6.** *Id.*

terests of the Government. However, in considering each appeal, we have found it quite difficult to envision how the release of the requested NCAs [negotiated contract abstracts], or other NCAs in similar circumstances, would be demonstrably adverse to the interests of either the Government or the submitter(s). We have also been unable to devise any theory under which an NCA could be found to be a deliberative document....

. . . .

In view of the above, I ask that you revise your guidance to bring it in line with our actions on the recent cases. Considerable time and effort spent on NCA appeals by both your people and those of us here in the Pentagon could be eliminated by your releasing this information.[7]

The AFLC officers, however, did not mend their ways immediately. They continued to withhold the bid abstracts Payne requested when they deemed competition for a contract sufficiently limited, forcing Payne to make repeated appeals to the Secretary to obtain the information to which Payne was entitled. Such appeals were frustrating, costly, and detrimental to Payne's business, because its clients, most of whom themselves tendered bids on Government contracts, understandably wanted a prompt report on the latest round of bidding so that they might advance profitable yet successful offers.

On July 18, 1986, Payne brought suit for declaratory and injunctive relief in the District Court. On November 17, 1986, the District Court granted the Government's motion to dismiss. *See Payne Enterprises, Inc. v. United States*, Civ. No. 86–1987 (D.D.C. Nov. 17, 1986), *reprinted in* App. 26–30. Although the District Court found that it was empowered to provide equitable relief, it considered itself bound to deny such relief because Payne had obtained the information it had requested through the Air Force's administrative appeals procedure. The District Court noted that "[i]t is possible ... that circumstances might exist where the Secretary's failure to compel a

subordinate's compliance with the letter and spirit of the FOIA, would constitute such an abuse that judicial intervention might be warranted." App. 30. But the court concluded, without explanation, that such circumstances were not present here.

On December 15, 1986, Payne filed a notice of appeal with this court. Shortly thereafter, AFLC bases began honoring Payne's requests for bid abstracts even when there had been limited competition for a particular contract. No requests have been denied since January 1987. In an affidavit submitted with the Government's brief, Deborah McLaughlin, an Air Force attorney, states that, as a result of a letter sent by Brigadier General Norman Thorpe to the AFLC bases on April 22, 1987, "all abstracts are being released at the request level by the A[F]LC from which they are requested." Affidavit of Deborah McLaughlin, Brief for Appellees, Addendum at 4. Major McLaughlin further promises that "the negotiated contract abstracts ... will not be denied in the future based solely on a limited competition situation...." *Id.* at 4–5.

On July 30, 1987, this court denied the Government's motion for summary affirmance, which was predicated on the claim that its new disclosure policy rendered this controversy moot. In denying this motion, we noted that Payne's allegations regarding AFLC refusals to disclose information "strike us as quite serious."

## II. ANALYSIS

### A. *Mootness*

The Government argues that Payne's suit is moot, both because the Air Force eventually released the abstracts Payne had requested and because AFLC bases have ceased refusing Payne's requests and promise to grant them in the future. We reject these contentions.

▮▮▮ It is, of course, true that, "however fitful or delayed the release of information under the FOIA may be, once all requested records are surrendered, federal

---

**7.** *Id.* at 21–22.

courts have no further statutory function to perform" with respect to the particular records that were requested. *Perry v. Block*, 684 F.2d 121, 125 (D.C.Cir.1982). A declaration that an agency's initial refusal to disclose requested information was unlawful, after the agency made that information available, would constitute an advisory opinion in contravention of Article III of the Constitution. *Better Gov't Ass'n v. Department of State*, 780 F.2d 86, 91 (D.C. Cir.1986). However, even though a party may have obtained relief as to a *specific request* under the FOIA, this will not moot a claim that an agency *policy or practice* will impair the party's lawful access to information in the future. *Id.* at 90–92. In this case, Payne has sought to show—and the Air Force has conceded—that the appellees are following an "impermissible practice" in evaluating FOIA requests, and that it will suffer "continuing injury due to this practice." *Id.* at 91.[8] It is clear that Payne's challenge is not moot.

■ The fact that the practice at issue is informal, rather than articulated in regulations or an official statement of policy, is irrelevant to determining whether a challenge to that policy or practice is moot. Courts have long recognized that there "may very well be circumstances in which prolonged delay in making information available or unacceptably onerous opportunities for viewing disclosed information require judicial intervention." *Lybarger v. Cardwell*, 577 F.2d 764, 767 (1st Cir.1978). So long as an agency's refusal to supply information evidences a policy or practice of delayed disclosure or some other failure to abide by the terms of the FOIA, and not

merely isolated mistakes by agency officials, a party's challenge to the policy or practice[9] cannot be mooted by the release of the specific documents that prompted the suit.

Nor can the Air Force moot this suit merely by refraining from the conduct of which Payne has complained while the case is pending. On this point, the Supreme Court has spoken unequivocally:

[V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot. A controversy may remain to be settled in such circumstances, *e.g.*, a dispute over the legality of the challenged practices. The defendant is free to return to his old ways. This, together with a public interest in having the legality of the practices settled, militates against a mootness conclusion. For to say that the case has become moot means that the defendant is entitled to a dismissal as a matter of right. The courts have rightly refused to grant defendants such a powerful weapon against public law enforcement.

*United States v. W.T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953) (citations omitted); *see also County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979).

The Government contends, however, that the Air Force's promise to desist from following the challenged practice should render this suit moot. This contention must fail because, on the facts of this case, the Government has not come close to satisfying the *heavy burden* of demonstrating

---

**8.** The Air Force has not disputed Payne's contention in its brief or at oral argument before this court. Nor did the Air Force raise any objection before the District Court to the Plaintiff's Statement of Material Facts as to Which There Is No Genuine Issue, *reprinted in* App. 23. That Statement contains the assertion that "the various AFLC bases adopted a concerted policy of refusing to release to plaintiff those abstracts it considers involve 'limited competition.'" *Id.* at ¶ 6, App. 24. The Statement also asserted that "[t]his continued course of conduct on the part of the Air Force has had, and continues to have, an adverse economic effect upon plaintiff." *Id.* at ¶ 10, App. 25. Because the Air

Force never contested these assertions, the District Court and this court take them as true.

**9.** Payne's attack on the Air Force's informal practice of tardy disclosure distinguishes its suit from that in *Gulf Oil Corporation v. Brock*, 778 F.2d 834 (D.C.Cir.1985). In *Gulf*, the appellant only challenged Department of Labor regulations *as applied* to a single FOIA request. Because Gulf failed to advance a facial challenge to the regulations, we were constrained to dismiss its appeal when the FOIA request whose fulfillment Gulf opposed was withdrawn. Payne's broader challenge, however, survives its receipt of the abstracts it requested.

"that 'there is no reasonable expectation ...' that the alleged violation will recur." *County of Los Angeles*, 440 U.S. at 631, 99 S.Ct. at 1383 (quoting *W.T. Grant*, 345 U.S. at 633, 73 S.Ct. at 897). As the Court noted in *W.T. Grant:*

> The case may nevertheless be moot if the defendant can demonstrate that "there is no reasonable expectation that the wrong will be repeated." The burden is a heavy one. Here the defendants told the court that the interlock[ing directorates] no longer existed and disclaimed any intention to revive them. Such a profession does not suffice to make a case moot although it is one of the factors to be considered in determining the appropriateness of granting an injunction against the now-discontinued acts.

345 U.S. at 633, 73 S.Ct. at 897 (footnote omitted).

The principles enunciated in *W.T. Grant* and *County of Los Angeles* control our resolution of this issue. The Government has offered only modest assurance, in the form of an affidavit by an Air Force major, that the contested practice will not be reinstated. Major McLaughlin's claim that Payne's requests for bid abstracts "will not be denied in the future based solely on a limited competition situation" seems to be founded on her own inference from a letter sent by Brigadier General Thorpe to the AFLC bases on April 22, 1987. *See* Affidavit of Deborah McLaughlin, Brief for Appellees, Addendum at 4–5. She does not pretend to speak for her superiors, nor have they signed affidavits pledging future compliance. Given this weak assurance, coupled with the history of stubborn refusals by AFLC officers to release information to Payne—even in the face of instructions from the Secretary of the Air Force—we certainly cannot conclude that the Air Force has met the "heavy burden" of showing that "there is no reasonable expectation that the wrong will be repeated." *United States v. Aluminum Co. of America*, 148 F.2d 416, 448 (2d Cir.1945); *see W.T. Grant, supra.* The case therefore cannot be deemed moot.

## B. *Ripeness*

■ The Government also submits that we should not reach the merits of Payne's suit because it is unripe. Generally, in ascertaining whether a suit is ripe, courts must balance "the petitioner's interest in prompt consideration of allegedly unlawful agency action against the agency's interest in crystallizing its policy before that policy is subjected to judicial review and the court's interests in avoiding unnecessary adjudication and in deciding issues in a concrete setting." *Eagle–Picher Indus. v. EPA*, 759 F.2d 905, 915 (D.C.Cir.1985); *see Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967) (courts must assess "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration"). Contrary to the Government's assertion, we hold that these factors clearly weigh in favor of adjudication rather than dismissal.

First, this case presents a concrete legal dispute; no further factual development is essential to clarify the issues. The question is simply whether the blanket refusal of AFLC bases to grant Payne's FOIA requests when there is limited competition for a contract, without any legal reason apart from an admittedly inadequate reference to Exemptions 4 and 5, warrants equitable relief. The Government's claim that the case does not present purely legal issues because each request is different and may implicate different concerns misses the point of this case. Payne acknowledges that if the Air Force were to withhold information on the basis of some other exemption, or if it were to invoke Exemption 4 or Exemption 5 for some reason other than the bare fact that competition for a particular contract was limited, then Payne would have to seek review through administrative channels. *See* Reply Brief for Appellant at 3–4. We cannot but conclude that the issue presented by Payne's suit is sufficiently sharp for adjudication; nothing would be gained by postponing its resolution.

Second, there is no doubt whatever that the challenged Air Force practice has

"crystallized" sufficiently for purposes of judicial review. In *Eagle–Picher*, we indicated that the so-called "crystallization" factor involved consideration of whether a court might be forced to guess at the ramifications of vague regulatory standards before an agency lends them content by applying them. In Payne's case, however, the outlines and impact of the disputed practice are manifest. It is a practice of unjustified delay by means of an initial denial followed by the eventual release of the requested document, resulting in financial injury to Payne.

Third, Payne obviously has an interest in the speedy adjudication of its grievance, so there is little question regarding the appellant's "interest in prompt consideration of allegedly unlawful agency action." *Eagle–Picher*, 759 F.2d at 915. However, as we suggested in *Eagle–Picher*, this factor is largely irrelevant in a case of this sort because we have not found here that either the agency or the court has a significant interest in postponing review. *Id.* at 915, 918. In other words, under the ripeness doctrine, the hardship prong of the *Abbott Laboratories* test is not an independent requirement divorced from the consideration of the institutional interests of the court and agency. As we held in *Consolidation Coal Co. v. Federal Mine Safety &*

*Health Review Commission,* 824 F.2d 1071 (D.C.Cir.1987):

> This case stands in sharp contrast to the typical ripeness case, however; here, the interests of both the court and the agency favor immediate review of the Commission's finding. Where, as in this case, there are no institutional interests favoring postponement of review, and in fact the agency and the court have a positive interest in immediate review, "there are no conflicting interests to balance." *Eagle–Picher,* 759 F.2d at 918. It is enough that the petitioner show that it has suffered sufficient hardship to pass the Article III threshold. Because we have already determined that Consol has shown sufficient hardship to satisfy the constitutional requirement, it seems obvious that "[w]e need not proceed ... to the second prong of the *Abbott Laboratories* test." *Eagle–Picher,* 759 F.2d at 918; *see also Midwestern Gas Transmission Co. v. FERC,* 589 F.2d 603, 621 (D.C.Cir.1978).

*Id.* at 1081–82 (footnotes omitted).[10]

Moreover, even if we were required to consider whether Payne has demonstrated sufficient hardship "to outweigh any institutional interests in the deferral of review," *Better Government,* 780 F.2d at 92, we would still find this suit ripe for review. Indeed, our decision in *Better Government*

---

**10.** We recognize that in both *Eagle–Picher* and *Consolidation Coal* the court found that there were "positive interests favoring immediate review." *See Consolidation Coal,* 824 F.2d at 1081 n. 11. It is unclear whether such a finding is necessary in order to avoid consideration of the hardship prong of the *Abbott Laboratories* test. The majority in *Consolidation Coal* refers to "positive interests" almost as an aside or a make-weight:

> Where, as in this case, there are no institutional interests favoring postponement of review, [and in fact the agency and the court have a positive interest in immediate review], "there are no conflicting interests to balance."

*Id.* at 1081 (quoting *Eagle–Picher,* 759 F.2d at 918) (brackets inserted to highlight reference to "positive interest"). Furthermore, if, as the majority holds in *Consolidation Coal,* the hardship prong of the *Abbott Laboratories* test is not an independent requirement from the consideration of the institutional interests of the court and agency, *id.* at 1081 n. 11, and if (as in this case) there are no significant agency or judicial interests militating in favor of delay, we cannot imagine how the hardship factor could ever tip the balance against judicial review.

In this case, the question is moot. First, as we have shown above, any balance of the hardship prong militates in favor of judicial review. Second, there are clear positive interests here. The benefit to the agency is that disposition of this issue will resolve, once and for all, the long-standing debate between AFLC officers and the Office of the Secretary of the Air Force over the application of the FOIA with respect to bid abstracts. It will also curb what the Secretary's Office has described as an "excessive" number of administrative appeals by Payne. *See* note 6 *supra* and accompanying text. The benefit to the court is avoidance of a waste of judicial resources. A significant amount of litigation time already has been expended on this dispute, and it would be a monumental waste for us to avoid judgment now when we have good reason to believe that, absent judgment, exactly the same case will return to court later.

is controlling on this point. The continued use by the Air Force of a practice of unreasonably delaying the release of information pertaining to bid abstracts "has a 'direct and immediate' impact on the appellants that rises to the level of hardship." *Better Government,* 780 F.2d at 93 (quoting *Abbott Laboratories v. Gardner,* 387 U.S. 136, 152, 87 S.Ct. 1507, 1517, 18 L.Ed.2d 681 (1967)). Payne relies "heavily and frequently on FOIA" to conduct work that is "essential to the performance of certain of their primary institutional activities." *Id.* "Thus, the 'primary conduct' of the appellants is affected by the [practice] at issue." *Id.* Consequently, because "[a]ppellants are indisputably frequent FOIA requesters, whose daily conduct and decision-making are affected by the [practice] at issue," *id.* at 95, and because there are no significant agency or judicial interests militating in favor of delay, no balance can be struck against a finding that this case is ripe for judicial review.

In sum, the collection of interests relevant to the adjudication of Payne's suit points ineluctably to the conclusion that this case is ripe for decision.

### C. *Payne's Right to Equitable Relief*

■ The FOIA imposes no limits on courts' equitable powers in enforcing its terms. *Renegotiation Bd. v. Bannercraft Clothing Co.,* 415 U.S. 1, 19–20, 94 S.Ct. 1028, 1038, 39 L.Ed.2d 123 (1974). The District Court concluded, however, that it ought not use its discretion to grant equitable relief because Payne had prevailed in its administrative appeals and because the Air Force's failure to compel AFLC bases to abide by the letter and spirit of the FOIA was, for some unspecified reason, not sufficiently outrageous to warrant a court order. *Payne Enterprises, Inc. v. United States,* Civ. No. 86–1987 (D.D.C. Nov. 17, 1986), App. 29–30.

We hold that the judgment of the District Court reflects a clear abuse of discretion. For almost two years, officers at AFLC bases refused to fulfill Payne's requests for copies of bid abstracts when there was limited competition for a contract, thus forcing Payne to seek administrative review. In *every* case, the Secretary of the Air Force released the information Payne requested. In November 1985 and June 1986, the Secretary's Office sent letters to AFLC commanders, admonishing them for their refusals to grant Payne's requests because no FOIA exemption applied. Affidavit of Garner D. Payne ¶ 10, *reprinted in* App. 18; Letter of Steven Thompson to Major General Charles McDonald (June 20, 1986), App. 20–21. The AFLC officers, however, continued to deny Payne's requests, and the Secretary refrained from taking firm action to end their recalcitrance. The Secretary's inability to deal with AFLC officers' noncompliance with the FOIA, and the Air Force's persistent refusal to end a practice for which it offers no justification, entitle Payne to declaratory relief. *See Long v. IRS,* 693 F.2d 907 (9th Cir.1982) (reversal and remand for consideration of injunctive relief where IRS repeatedly released requested documents after suits were filed in effort to render suits moot). The fact that Payne eventually obtained the information it sought provides scant comfort when stale information is of little value yet more costly than fresh information ought to be. Payne has an undeniable right to the bid *information* —whether or not it is compiled in the form of bid abstracts—and it is entitled to a judgment in support of its claim. On this point, we agree with the holding of the Ninth Circuit in *Long:*

> Congress did not intend for the IRS, or any other agency, to use the FOIA offensively to hinder the release of non-exempt documents. The appellants have fully complied with the administrative scheme. It was the IRS' abuse of this scheme that forced the appellants to bring several lawsuits to obtain release of the documents.... These unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent these abuses.

693 F.2d at 910. We therefore reverse and remand with instructions to afford Payne declaratory relief.

On remand, the District Court should also consider the propriety of injunctive relief. In so doing, the court may accept new affidavits from the parties, and it should assess the import of events that have occurred since it issued its previous decision in November 1986. In particular, it should evaluate the likelihood that the Air Force will return to its illicit practice of delay in the absence of an injunction, given the Air Force's declared intention not to do so but its reservations about the applicability of Exemptions 4 and 5 to situations where the Air Force is able to prove that disclosure redounds to its financial detriment.

### III. CONCLUSION

We reverse the District Court's decision granting the Government's motion to dismiss, and remand with instructions to enter a declaratory judgment for Payne. The District Court should also supply Payne with injunctive relief if it deems such relief appropriate.

*So ordered.*

D.H. GINSBURG, Circuit Judge, concurring:

I concur in the judgment and in all of the Court's opinion except the discussion of the hardship element of ripeness, which is, by the Court's own description, "largely irrelevant in a case of this sort," *supra* at 493, or "[i]n this case ... moot." *Id.* at 493 n. 10. That portion of the opinion addresses an issue that was not contested before us and need not be decided by us.