PILLARD, Circuit Judge, concurring:
*785 I join the majority opinion in full. In view of the disagreement between my colleagues, I write separately to emphasize what I see as the alleged Freedom of Information Act (FOIA) violations, and to spell out how, because the complaint alleges a persistent "practice" of violating FOIA, the Secret Service's production of records in response to Judicial Watch's lawsuit did not render the claims moot.
Judicial Watch wants to keep the public informed of how much taxpayer money is spent on travel by the First Families and others who travel under Secret Service protection. FOIA is designed to make such a project easy and inexpensive. Under FOIA, information showing "what [the] government is up to," EPA v. Mink , 410 U.S. 73, 105, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973) (Douglas, J., dissenting), is presumptively available for the asking-no lawyer needed-to any person at little or no cost. But it has not worked out that way for Judicial Watch. The organization has had to wait for many months, and to devote resources that would be unaffordable to most requesters to file half a dozen lawsuits, just to get this simple information.
Judicial Watch alleges a continuing practice of virtually complete passivity by the Secret Service in responding to the series of straightforward requests that Judicial Watch alleges it has made and plans to continue to make. In these circumstances, a complete but belated response does not moot the case. The statute "does not allow agencies to keep FOIA requests bottled up for months or years on end while avoiding any judicial oversight." Citizens for Responsibility & Ethics in Wash. v. FEC , 711 F.3d 180, 190 (D.C. Cir. 2013) ( CREW ). Because the pleadings show no statutorily adequate explanation for the agency's persistent practice of alleged delays in violation of FOIA, the district court retains jurisdiction over whatever further proceedings are needed to determine whether declaratory or injunctive relief is appropriate. On remand, the district court should call on the Secret Service either to bring its FOIA process into line with the statute, or to explain to the court's satisfaction that it has already done so.
* * *
When a member of the public makes a request for government records, FOIA requires the agency to "determine within 20 days" what responsive records it has and can produce consistent with FOIA's exemptions, 5 U.S.C. § 552(a)(6)(A)(i), to "immediately" notify the requester of its determination, id ., and to follow up by making nonexempt records "promptly available," id . § 552(a)(3)(A). FOIA thus sets a default 20-day deadline for the underlying determination , and simply requires that the ensuing production of records be made to the requester "promptly" thereafter. These requirements are tied together, for Congress plainly intended production of records to follow close on the heels of the determination. As we explained in CREW , "promptly" under Section 552(a)(3)(A)"typically would mean within days or a few weeks of a 'determination,' not months or years." See CREW , 711 F.3d at 188-89.
There is no doubt that Congress intended FOIA's time limits to be mandatory. See Open America v. Watergate Special Prosecution Force , 547 F.2d 605, 617 (D.C. Cir. 1976) (Leventhal, J., concurring) ("Excessive delay by the agency in its response is often tantamount to denial. It is the intent of this bill that the affected agencies be required to respond to inquiries ... within specific time limits.") (quoting H.R. Rep. No. 93-876, 93d Cong., 2d Sess. (1974)). Our dissenting colleague minimizes the importance of the 20-day deadline for *786 the agency to make its determination by noting that, once an agency exceeds it, the requester is released from FOIA's administrative exhaustion requirement. See Diss. Op. 792-93, 794. He infers from its relevance to exhaustion that the 20-day deadline is somehow not itself enforceable. Id. We have never so held, nor need we pass on that question today. The violations alleged here are not limited to missing the 20-day deadline, but include the Secret Service's additional failures to make the responsive records "promptly available." 5 U.S.C. § 552(a)(3)(A). Suffice it to say that no court of which we are aware has given Section 552(a)(6)(A)(i) 's 20-day default deadline the restricted role the dissent envisions, whereas at least one sister circuit reads it to support a legal challenge where an agency responded "well beyond the twenty-day limit" without "notice of any 'unusual circumstances' justifying an extension." Hajro v. U.S. Citizenship & Immigration Servs. , 811 F.3d 1086, 1106-07 (9th Cir. 2015).
Regardless whether ignoring the 20-day deadline is alone actionable, there is no question that substantial delays can support cognizable FOIA claims: We have held that "unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent these abuses." Payne Enters., Inc. v. United States , 837 F.2d 486, 494 (D.C. Cir. 1988) (quoting Long v. IRS , 693 F.2d 907, 910 (9th Cir. 1982) ); cf. McGehee v. CIA , 697 F.2d 1095, 1110 (D.C. Cir. 1983) (holding that an agency's internal procedures for processing documents may violate FOIA where the "net effect" is "significantly to increase the amount of time [the requester] must wait to obtain them"). Faced with information suggesting that "an agency's responses to a request for information have been tardy and grudging, courts should be sure they do not abdicate their own duty." McGehee , 697 F.2d at 1114. Allegations of an agency's unexplained delay-here, alleged failures for several months to respond to simple requests to make responsive, non-exempt records "promptly available"-suffice to state a FOIA claim.
When, as often happens, an agency voluntarily produces requested records during the course of a lawsuit, that production typically satisfies the requester and ends the case. But not always. Voluntary cessation of unlawful conduct moots a case, as a general matter, only "if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs ., Inc. , 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). Moreover, "[t]he heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." Id. In the FOIA context, an ongoing agency "policy or practice" of unlawful nondisclosure may mean the voluntary release of responsive records "does not deprive the tribunal of power to hear and determine the case, i.e ., does not make the case moot." Payne , 837 F.2d at 490 (quoting United States v. W.T. Grant Co. , 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953) ; citing Cty. of L.A. v. Davis , 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979) ); see Newport Aeronautical Sales v. Dep't of Air Force , 684 F.3d 160, 163-64 (D.C. Cir. 2012) ; Hajro, 811 F.3d at 1103, 1106 ; Mayock v. Nelson , 938 F.2d 1006 (9th Cir. 1991). A plaintiff plausibly alleging that its plans to request similar agency records will be stymied by an ongoing practice of unjustified delays may be entitled to injunctive or declaratory relief.
The question here is whether Judicial Watch has adequately alleged such a practice. The answer is yes.
*787 Over a period of years, Judicial Watch routinely asked for "VIP travel" expense information it wanted to include in reports to its interested public. See Compl. ¶ 16, Judicial Watch, Inc. v. Dep't of Homeland Sec. , 15-cv-1983 (D.D.C. Nov. 10, 2015). Judicial Watch alleges that the agency failed, time and again, to make prompt disclosure. When Judicial Watch filed this suit, the nineteen sequential requests at issue here had been pending for anywhere from seven to fifteen months without a single determination-let alone production-on any of the requested travel-expense information. Id. at Ex. A. Judicial Watch's complaint also references five preceding lawsuits, involving an earlier sequence of ten requests, seeking the very same kind of information as the nineteen requests at issue here. Id. ¶ 7. Each of those requests had likewise been pending for several months before Judicial Watch filed each related lawsuit. See id .
With allegations of 29 similar requests across six lawsuits met by unexplained months of waiting for the Secret Service to produce responsive records, the complaint makes out a consistent practice of delay in violation of FOIA. Even though the 20-day deadline had elapsed many times over, the Secret Service admits that it had not made the requisite "determinations." See 5 U.S.C. § 552(a)(6)(A)(i) ; Compl. ¶¶ 13-16; Answer ¶ 14, Judicial Watch , 15-cv-1983 (D.D.C. Dec. 22, 2015). Nor did it give plaintiff written notice of any "unusual circumstances" that might have entitled it to an additional ten working days to make its determinations. See 5 U.S.C. § 552(a)(6)(B)(i). The statute obligates the agency to reach out to requesters if it will not meet the initial 20-day deadline in order to negotiate potential efficiencies, such as by agreeing to an alternative timeframe for processing or by narrowing a request "so that it may be processed within [the 20-day] time limit," see id. § 552(a)(6)(B)(i), (ii), (iii), but there is no indication that the Secret Service made any such overtures to Judicial Watch, see Compl. ¶ 14; Answer ¶ 14. For most of the nineteen requests at issue in this suit, the Secret Service simply assigned a tracking number and provided no further communication to Judicial Watch, see Compl. ¶ 11; for some of the requests, the agency failed to do even that much, id. ¶ 10. The Secret Service made no production of the records before it faced litigation-and even when each earlier lawsuit eventually dislodged some requested records, the cycle began again with ensuing requests. None of the eventual production was within a timeframe that our cases accept as "prompt" in the absence of any justification from the Secret Service. See 5 U.S.C. § 552(a)(3)(A) ; CREW , 711 F.3d at 189. The allegations, considered together with reasonable inferences therefrom drawn in Judicial Watch's favor, make out a persistent Secret Service practice of violating FOIA's requirements for making nonexempt government records promptly available to the public.
At the pleading stage, we lack critical context about the alleged delays and so cannot simply assume and unquestioningly accept that they are justified. To be sure, what counts as prompt production varies "depending on the circumstances." CREW , 711 F.3d at 188. But if we were to hold that the circumstances alleged here, without more, satisfied the Secret Service's statutory duties under FOIA, the roles Congress assigned the courts as the primary enforcer of FOIA and agencies as the proactive stewards of FOIA's implementation would be substantially undermined.
Consider the character of the requests themselves. The requested records are generally in the form of receipts-evidencing, for example, expenditures for flights, *788 rental cars, and hotels-subject to only routine redactions under FOIA's exemptions. See, e.g. , U.S. Secret Service, Response to FOIA Request Number 20131414 (June 12, 2014), http://www.judicialwatch.org/wp-content/uploads/2014/10/2323_Responses.pdf.[1] It is a familiar fact of life to the hundreds of millions of people in the United States who travel each year for their work that employers collect and process travel expense information regularly; any adequately functioning organization should be able to produce travel expense information with dispatch. There is no suggestion that the requests at issue in this case involve any subtle relevance questions about where or how to search, or cumbersome inter-agency collaboration to identify what information is kept, and where it might be found. Cf. McGehee , 697 F.2d at 1098-99. The Secret Service presumably already keeps and electronically tracks government-paid travel expense information for any number of internal reasons. And, by now, Judicial Watch's repeated requests themselves may provide an additional reason for it to do so: FOIA obligates agencies to take initiative-even in the absence of a further request-to facilitate public access to commonly sought information, such as by publishing it in advance, see 5 U.S.C. § 552(a)(2)(D), and fast-tracking simple requests, id . § 552(a)(6)(D) ; see also U.S. Dep't of Homeland Sec., 2018 Chief FOIA Officer Report to the Attorney General of the United States 22-23 (Mar. 2018), https://www.dhs.gov/sites/default/files/publications/2018%20 Chief%20FOIA%20Officer%20Report.pdf (2018 DHS Chief FOIA Officer Report ) (describing "Steps Taken to Increase Proactive Disclosures," and asserting that the Secret Service has begun posting at least some travel expense information in advance of requests). For all one can glean from the pleadings, Judicial Watch's requests are wholly mundane.
The dissent, however, assumes the requests are "complex," Diss. Op. 795-96, and finds their processing time reasonable in light of the average "complex" request processing times listed in a Secret Service FOIA report. See id. (citing U.S. Dep't of Homeland Sec., 2015 FOIA Report to the Attorney General of the United States 5, Table V.A. (Feb. 2016), https://go.usa.gov/xXQVvf). That FOIA report, however, was not incorporated in any pleading. It was not even mentioned in briefing. At the pleading stage, as the district court correctly recognized, Judicial Watch v. Dep't of Homeland Sec. , 211 F.Supp.3d 143, 145 n.1 (D.D.C. 2016), we confine our review to the allegations, see Banneker Ventures, LLC v. Graham , 798 F.3d 1119, 1133 (D.C. Cir. 2015). In any event, the FOIA report says nothing about how these requests compare with those the Secret Service itself denominated as "complex," in terms of the difficulty and time needed to process them. We are here required to make the reasonable inference in Judicial Watch's favor that its VIP-travel expense requests are wholly straightforward; it is open to the agency on remand to seek to show otherwise.
In sum, Judicial Watch has plausibly alleged a persistent practice of delay that violates FOIA's mandate to make responsive records "promptly available." See 5 U.S.C. § 552(a)(3)(A). At the pleading stage, no more is required to support the district court's jurisdiction to consider, in *789 view of the agency's potential justifications, any need for equitable relief.
Our dissenting colleague sees no allegations of delay that could violate FOIA. See Diss. Op. 796. His main point is that agencies cannot be expected to respond post haste to every one of the thousands of FOIA requests that agencies today receive. But to assume at the pleading stage that an agency faces hurdles and can offer rationales that were never pleaded or proved contravenes both Federal Rule of Civil Procedure 12(c) and FOIA itself. We are well aware that FOIA processing is no picnic: It can be painstaking and sometimes highly technical for requestors, agencies, and courts alike. But FOIA nonetheless requires each federal agency to swiftly disclose all nonexempt information, even as it must accurately sort and withhold information that falls within the statute's exemptions. Needless to say, busy agencies, ever pressed to do more with limited resources, lack incentives to get that done. That is precisely why Congress enacted FOIA's timeframes and authorized district courts to enjoin agencies from improperly delaying public access to non-exempt records.
The statute places the burden on the agency, not the FOIA requester, to justify delays in processing. Once an agency has been sued in district court for improperly withholding records, "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B). But see Judicial Watch , 211 F.Supp.3d at 147 ; Diss. Op. 796-97. FOIA requires an agency that has not made prompt production to explain its delinquency: It allows additional processing time only "[i]f the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request." See 5 U.S.C. § 552(a)(6)(C)(i). The statute spells out that "exceptional circumstances" do "not include a delay that results from a predictable agency workload of requests" unless the agency affirmatively shows that it is making "reasonable progress in reducing its backlog of pending requests." Id. § 552(a)(6)(C)(ii). It is emphatically not permissible under FOIA for a court simply to assume that an agency's circumstances are "exceptional." There is no ground on this record for relieving the Secret Service of its burden of justification and simply presuming the Secret Service is systemically entitled to the "additional time" referred to in Section 552(a)(6)(C)(ii).
A few additional points: The dissent contends that, by requiring agencies to issue reports on the number of delayed requests and to provide tracking numbers to requesters, FOIA expressly tolerates across-the-board, prolonged waits for production of nonexempt information. See Diss. Op. 791-92, 794-95. But nothing about FOIA's reporting and tracking mechanisms suggests they excuse violations of the statute's "determination" deadline or its expectation that, once a determination is made, a requester will be "immediately" informed and responsive records will be produced "promptly." FOIA excuses slow processing of nonexempt information only when the agency has carried its burden to justify withholding records, 5 U.S.C. § 552(a)(4)(B), and to explain how its delays are warranted by "exceptional" circumstances, id. § 552(a)(6)(B), (C)(i). In short, the statute does not condone agency personnel sitting behind accumulating mounds of FOIA requests and requiring each requester to "take a number" and wait many months or years for the agency to comply. It is innovation-forcing, requiring agencies to consider "adjustments to ... practices, policies, personnel, and funding as may be necessary to improve its implementation of" the statute, including "the timely processing of requests for information." See id. § 552(j)(2)(C), (3)(D) ;
*790 see also 2018 DHS Chief FOIA Officer Report , at 26-27 (discussing "Steps Taken to Greater Utilize Technology").
Recognizing that Judicial Watch has stated a policy or practice claim here imposes no new or untenable burdens on agencies. Our circuit has recognized the "policy or practice" doctrine for thirty years. See Newport Aeronautical Sales , 684 F.3d at 164 (recognizing that, "even though a party may have obtained relief as to a specific request under the FOIA, this will not moot a claim that an agency policy or practice will impair the party's lawful access to information in the future") (emphasis in original) (citing Payne , 837 F.2d at 489 ). District courts, moreover, have many tools at their disposal to focus and streamline inquiry into whether the agency's production times are justified. See generally Fed. R. Civ. P. 26(b)(2)(c) ; McGehee , 697 F.2d at 1112-13 (discussing reliance on agency affidavits at the summary judgment stage in FOIA exemption dispute).
In considering the propriety of injunctive or declaratory relief, the district courts should be mindful of their "duty to prevent ... abuses" of FOIA. Payne , 837 F.2d at 494. They should assess whether an agency is acting with due diligence and making reasonable progress in reducing backlogs, including by availing itself of tools to improve its efficiency.
* * *
Congress in FOIA expressed a national commitment to open government. A democratic society requires an informed citizenry-not only to check against corruption and to hold government accountable, but also to dispel misconceptions and fallacies that secrecy feeds. As widely emulated as it has been here and abroad, FOIA is not the only-or necessarily the best-way to make the workings of government as open as practicable to the people in whose name its officials wield power and resources. See generally David E. Pozen, Freedom of Information Beyond the Freedom of Information Act , 165 U. Pa. L. Rev. 1097 (2017). Nevertheless, as Congress enacted and we have applied it, FOIA supports Judicial Watch's "policy or practice" claim. I thus join the opinion of the court holding that the Secret Service did not defeat the district court's jurisdiction to consider whether equitable relief might still be warranted even though-after repeatedly failing for months to respond to simple requests-it provided the information in full after the lawsuit was filed.

These records were produced in response to one of Judicial Watch's travel-related FOIA requests, see Compl. ¶¶ 21-24, Judicial Watch v. U.S. Secret Service , 14-cv-0046 (D.D.C. Jan. 13, 2014), that was the subject of an earlier Judicial Watch suit; the current complaint refers to that request and lawsuit, among others, in alleging the persistent practice of slow responses. See Compl. ¶ 7.