# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued September 15, 2017     Decided July 17, 2018

No. 16-5339

JUDICIAL WATCH, INC.,
APPELLANT

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:15-cv-01983)

*Lauren M. Burke* argued the cause and filed the briefs for appellant. *Paul J. Orfanedes* entered an appearance.

*Sarah Carroll*, Attorney, U.S. Department of Justice, argued the cause for appellee. With her on the brief was *Mark B. Stern*, Attorney.

Before: ROGERS, SRINIVASAN, and PILLARD, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

Concurring opinion filed by *Circuit Judge* PILLARD.

Dissenting opinion filed by *Circuit Judge* SRINIVASAN.

ROGERS, *Circuit Judge*: For years, Judicial Watch has monitored expenditures of U.S. Government funds on "VIP" travel by submitting requests for records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to the U.S. Secret Service and other agencies and reporting its findings to the public. Between 2012 and 2014, when the Secret Service failed to make requested records available in a timely manner, Judicial Watch was forced to file a lawsuit on five separate occasions in order to obtain the records. Upon such filing, the Secret Service produced non-exempt records, mooting the litigation.

In November 2015, Judicial Watch was forced again to file a lawsuit when the Secret Service failed to make available records in response to nineteen travel-related FOIA requests submitted over a thirteen-month period. This time, in addition to seeking an order that the Secret Service produce requested records, Judicial Watch sought injunctive relief so the Secret Service would not continue to violate FOIA's mandate that federal agencies "shall" make requested records "promptly available." 5 U.S.C. § 552(a)(3)(A). Judicial Watch alleged that the Secret Service "has a policy and practice of violating FOIA's procedural requirements," by "regularly failing" to either produce requested records or make a determination regarding their availability in accord with FOIA's timetables, 5 U.S.C. § 552(a)(6)(A), or within a reasonable time. Compl. ¶ 22. Four months after the lawsuit was filed, the Secret Service, much as it had done on the five prior occasions when Judicial Watch had sued, produced non-exempt records, thereby mooting the production request.

The only question now before the court is whether the complaint adequately alleged a "policy or practice" claim under FOIA. The district court ruled that Judicial Watch had failed to plead sufficiently egregious facts and granted judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Because the court's precedent recognizes that a policy or practice claim may be predicated upon an agency's abuse of FOIA's statutory scheme, we reverse and remand to the district court for further proceedings.

## I.

The Freedom of Information Act provides that federal agencies, "upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records *promptly available*." 5 U.S.C. § 552(a)(3)(A) (emphasis added). To ensure this mandate did not become a dead letter, Congress adopted a two-part approach. First, Congress imposed a set of requirements on federal agencies: It established timetables for agencies to respond to requests as well as procedures for agencies to obtain additional time, and required adoption of records management systems to facilitate "prompt" responses. Second, Congress provided members of the public whose records requests were denied a right to an administrative appeal and a right to seek judicial relief. Briefly summarized, the salient features of this two-part scheme are as follows:

First, an agency "shall determine" within twenty business days (one month) of receiving a FOIA request "whether to comply with such request," and "shall immediately notify the person making such request of such determination and the reasons therefor." *Id.* § 552(a)(6)(A). The agency may toll the response period once while seeking further information from the requester on the scope of the information sought. *Id*. In

"unusual circumstances," the agency may extend the determination deadline by ten business days (two weeks) upon explaining the circumstances to the requester. *Id.* § 552(a)(6)(B)(i). If additional time is required to address the request, the agency "shall notify the [requester] . . . and shall provide the person an opportunity to limit the scope of the request . . . or an opportunity to arrange with the agency an alternative time frame for processing the request or a modified request." *Id.* § 552(a)(6)(B)(ii).

To promote "efficient and appropriate compliance" with FOIA, *id*. § 552(j)(2)(A), agencies "shall" publish their internal organization and procedures relating to records requests, *id.* § 552(a)(1), and provide in electronic format instructions on how records may be requested, *id.* §§ 552(a)(2), (g). Agencies "shall" also maintain records systems by which requesters can obtain status updates on pending requests. *Id.* § 552(a)(7). Further, agencies "shall promulgate regulations" that "provid[e] for expedited processing of requests" when, for example, "the person requesting the records demonstrates a compelling need," and that "ensure" the agency makes such determination within ten business days. *Id.* § 552(a)(6)(E). Agencies are encouraged to "provid[e] for multitrack processing of requests." *Id.* § 552(a)(6)(D)(i). To assist in covering the costs of these requirements, agencies may impose reasonable fees for the processing of requests. *Id*. § 552(a)(4)(A).

Each agency also "shall designate" a Chief FOIA Officer, *id.* § 552(j), to monitor implementation of FOIA, keep government officials apprised of the agency's performance, develop policy recommendations, and otherwise facilitate public understanding of FOIA's exemptions, *id.* § 552(k). The officer, in turn, "shall designate" public liaisons responsible for "assisting in reducing delays, increasing transparency and

understanding of the status of requests, and assisting in the resolution of disputes." *Id.* §§ 552(k)(6), (*l*). Congress also required that agencies "shall annually report" to it on the requests received, processing times, determinations made, administrative appeals, pending cases, and related information. *Id.* §§ 552(e), (k)(4)–(5).

Second, FOIA provides procedural protections for a member of the public requesting records from an agency. Upon a denial of a request, the requester may seek reconsideration by the head of the agency. *Id.* § 552(a)(6)(A)(i). Upon exhausting the administrative appeal, the requester may seek judicial relief. *Id.* §§ 552(a)(4)(B), (a)(6)(A)(ii). Exhaustion is excused when the agency fails to make a timely determination — that is, within the timetables established in § 552(a)(6) — whether to produce records or to withhold them pursuant to a statutory exemption. *Id.* § 552(a)(6)(C)(i). Judicial relief, in turn, may extend beyond requiring production to providing injunctive relief. *Id.* § 552(a)(4)(B).

In sum, FOIA "reflect[s] 'a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language.'" *Dep't of Air Force v. Rose*, 425 U.S. 352, 360–61 (1976) (quoting S. REP. No. 813, 89th Cong., 1st Sess., 3 (1965)). It "stand[s] in sharp relief against" the prior procedures under the Administrative Procedure Act, which were "generally recognized as falling short of its disclosure goals and came to be looked upon more as a withholding statute than a disclosure statute." *EPA v. Mink*, 410 U.S. 73, 79 (1973). FOIA "seeks to permit access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information from possibly unwilling official hands." *Id.* at 80. Congress's use of the word "shall" in issuing

directives to agencies in support of the overarching mandate to make records "promptly available," 5 U.S.C. § 552(a)(3)(A), instructs courts that Congress contemplated meaningful agency engagement upon receipt of a FOIA request. Agencies initially have a month to determine whether records can be made available in light of nine statutory exemptions, *id.* § 552(b)(1)–(9), and have several ways to obtain additional time to respond to requests. This engagement is premised on agencies improving records management systems to enable "prompt" responses. Congress underscored the importance it attached to prompt responses by allowing judicial recourse, bypassing administrative exhaustion, if an agency fails to meet statutory timetables for disclosure or to justify its delay in making non-exempt records available upon request. *See Mink*, 410 U.S. at 93; *McGehee v. CIA*, 697 F.2d 1095, 1101 (D.C. Cir. 1983).

The instant appeal brings into sharp focus the meaning of FOIA's mandate that agencies "shall" make requested records "promptly available" under this two-part scheme. Between July 2014 and August 2015, Judicial Watch submitted nineteen FOIA requests to the Secret Service for records on public expenditures for travel by President Obama and the First Lady, Vice President Biden, and former President Carter. Upon acknowledging receipt of and assigning tracking numbers to 17 of the 19 requests, the Secret Service took no further action and stood mute. In November 2015 — between three and eighteen months after the Secret Service had received Judicial Watch's records requests — Judicial Watch filed suit. Attached to its complaint was a chart showing as to each request that the Secret Service[1] had not made any of the requested records available

---

[1] The Secret Service is a "distinct" entity within the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub. L. No. 107-296 § 821, 116 Stat. 2135, 2224 (codified at 6 U.S.C. § 381).

nor advised Judicial Watch whether any records were exempt from disclosure. Citing the five lawsuits it had filed against the Secret Service in similar circumstances to obtain similar records, Judicial Watch alleged that "[t]he Secret Service *regularly fails* to issue determinations . . . within the time period required by FOIA, causing [Judicial Watch] to bring suit in order to obtain the requested records." Compl. ¶¶ 7–8, 13 (emphasis added). The repeated, prolonged, and unexplained delays have prevented Judicial Watch from gathering complete records for its reports to the public on federally funded VIP travel. *See id.* ¶ 16. Further, Judicial Watch "intends to continue submitting identical or nearly identical travel-related FOIA requests as part of its on-going efforts to educate and inform the public about 'what their government is up to' and promote transparency, integrity, and accountability in government and fidelity to the rule of law." *Id.* ¶ 17.

Judicial Watch's complaint was in two counts. Count I alleged the Secret Service is "violating FOIA by failing to conduct a search reasonably calculated to uncover all records responsive to each . . . request[] and is unlawfully withholding records responsive to each request." *Id.* ¶¶ 19–20. As relief it sought an order directing the Secret Service to search and produce the non-exempt records "by a date certain." *Id.* at 6–7. Count II alleged that the Secret Service, "[o]n information and belief . . . has a policy and practice of violating FOIA's procedural requirements" by "regularly failing or refusing to produce requested records or otherwise demonstrate that [they] are exempt from production within the time period required by FOIA or at least within a reasonable period of time," *id.* ¶ 22, causing it irreparable harm, *id.* ¶ 23. It sought in relief an order enjoining the Secret Service from adhering to its policy or practice. *Id.* at 7.

In answering the complaint, the Secret Service acknowledged that it had not made "a final response to all of [Judicial Watch's] FOIA requests," Answer ¶ 14, and otherwise denied violating FOIA. It also moved for judgment on the pleadings pursuant to Rule 12(c) and to dismiss Count II with prejudice. In an accompanying memorandum, the Secret Service stated that it would, in accord with the district court's scheduling order, produce all non-exempt records by March 18, 2016. Within four months of the filing of the complaint, the Secret Service had produced to Judicial Watch's satisfaction all requested non-exempt records, including some requested two years earlier, sought in Count I. As to Count II's request for injunctive relief, the Secret Service argued that the complaint failed to allege facts sufficient to support a policy or practice claim. Judicial Watch opposed the motion as to Count II and requested discovery of the Secret Service's FOIA practices in responding to its requests. Acknowledging that the repeated and unexplained failure to respond within FOIA's timetables or a reasonable time "could be due to a host of causes," Judicial Watch stated that it was unaware of any "unusual" or "exceptional" circumstances asserted by the Secret Service to justify its repeated failures to timely respond because the Secret Service "never has — nor does it now — offer such a reason [or] justification." Pl.'s Opp'n to Mot. for J. on Pldgs., at 6–7 (Mar. 12, 2016). "As such," Judicial Watch argued, "it[s] [non-responses] could also be the result of a policy or practice." *Id*.

The district court dismissed Count I as moot once the Secret Service produced the requested records. It also granted the Rule 12(c) motion for judgment on Count II, ruling that Judicial Watch had "failed to allege sufficient facts" establishing that the Secret Service had "adopted, endorsed, or implemented some policy or practice that constitutes an ongoing failure to abide by the terms of FOIA." *Judicial Watch*

*v. Dep't of Homeland Security*, 211 F. Supp. 3d 143, 146–47 (D.D.C. Sept. 29, 2016) (quoting *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 293 (D.D.C. Mar. 4, 2013)). In particular, the district court stated that Judicial Watch "points to no fact or statement to establish *why* requests were delayed or *how* the delays were the result of an either formal or informal policy or practice to violate FOIA's requirements, rather than inevitable but unintended delay attributable to a lack of resources." *Id.* at 146. It sought no explanation from the Secret Service but speculated the delays were likely due to a lack of resources.

Judicial Watch appeals the Rule 12(c) judgment on Count II. Our review is *de novo*, accepting as true, as we must, the factual allegations in the complaint. *Mpoy v. Rhee*, 758 F.3d 285, 287 (D.C. Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)).

## II.

FOIA lawsuits generally become moot once an agency has made available requested non-exempt records, whether voluntarily or after court order. *See Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982) (citations omitted). This court has recognized an exception to mootness where an agency has a "policy or practice" that "will impair the party's lawful access to information in the future." *Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988) (citing *Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 90–92 (D.C. Cir. 1986)). The First Circuit had recognized a similar exception in *Lybarger v. Cardwell*, 577 F.2d 764, 767 (1st Cir. 1978), and the Ninth Circuit has followed suit, *see Hajro v. U.S. Citizenship & Immigr. Servs.*, 811 F.3d 1086, 1103 (9th Cir. 2015). FOIA authorizes a court not only to "order the production of any agency records improperly withheld," but also to "enjoin the agency from withholding agency records."

5 U.S.C. § 552(a)(4)(B). This injunctive authority does not limit the district court's inherent injunctive powers. *See Renegotiation Bd. v. Bannercraft Clothing Co., Inc.*, 415 U.S. 1, 20 (1974).

In this circuit it is settled law that informal agency conduct resulting in long delays in making requested non-exempt records available may serve as the basis for a policy or practice claim. Our decision in *Payne* is instructive. There, for almost two years Air Force officials repeatedly refused to produce requested copies of bid abstracts for government contracts by invoking two FOIA exemptions even though the Secretary of the Air Force had repeatedly determined the exemptions were inapplicable. *Payne*, 837 F.2d at 487–90. Payne sought administrative review, which "[w]ithout exception" resulted in the production of the requested records. *Id.* at 489. Payne nonetheless filed suit challenging the agency's "practice of unjustified delay." *Id.* at 487. On appeal, this court identified the nature of a policy or practice claim:

> The fact that the practice at issue is informal, rather than crystalized in regulation or an official statement of policy, is irrelevant to determining whether a challenge to that policy or practice is moot. Courts have long recognized that there "may very well be circumstances in which prolonged delay in making information available or unacceptably onerous opportunities for viewing disclosed information require judicial intervention." So long as an agency's refusal to supply information evidences a policy or practice of delayed disclosure or some other failure to abide by the terms of the FOIA, and not merely isolated mistakes by agency officials, a party's challenge to the policy or practice cannot be mooted

by the release of the specific documents that prompted the suit.

*Id.* at 491 (quoting *Lybarger*, 577 F.2d at 767).

Upon concluding that Payne's case was not moot, *id.* at 494, the court also concluded that the agency's "repeated delays" in making requested records available were "wholly unjustified" and "clear violations" of FOIA, *id.* at 488–89. "[T]hat Payne eventually obtained the information it sought provides scant comfort when stale information is of little value yet more costly than fresh information ought to be." *Id.* at 494. The court endorsed the interpretation of FOIA that:

> Congress did not intend for . . . agenc[ies] to use FOIA offensively to hinder the release of non-exempt documents. The appellants [*i.e.*, the requesting parties] have fully complied with the administrative scheme. It was the [agency]'s abuse of this scheme that forced the appellants to bring several lawsuits to obtain release of the documents. . . . These unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent these abuses.

*Id.* (quoting *Long v. IRS*, 693 F.2d 907, 910 (9th Cir. 1982)). In remanding the case to afford Payne declaratory relief, this court instructed the district court to "consider the propriety of injunctive relief," *id.* at 494–95, after "evaluat[ing] the likelihood that the Air Force will return to its illicit practice of delay in the absence of an injunction," *id.* at 495.

The court applied *Payne* in *Newport Aeronautical Sales v. Dep't of Air Force*, 684 F.3d 160 (D.C. Cir. 2012). There, the agency had repeatedly invoked a FOIA exemption to deny

requests for technical data, forcing a government contractor to request the records pursuant to the agency's more onerous disclosure scheme, which required submission of information that the contractor did not have due to the nature of its business. *Id.* at 162–63. The contractor sued, challenging the permissibility of the agency's interpretation of FOIA. This court held that the Air Force's belated disclosure of requested records after the contractor filed suit did not moot the policy or practice claim because the Air Force had persisted in its challenged practice of non-disclosure. *Id.* at 163–64 (citing *Payne*, 837 F.2d at 491).

Judicial Watch does not allege agency misconduct in invoking FOIA exemptions as occurred in *Payne* or good-faith agency error in interpreting a FOIA exemption as occurred in *Newport*. Nor does Judicial Watch point to any formal policy or other substantive response by the Secret Service explaining its failures to "promptly" produce requested non-exempt records. Instead, Judicial Watch's policy or practice claim is based on the Secret Service's repeated, unexplained, and "prolonged delay in making information available." *Payne*, 837 F.2d at 491. It alleges that the Secret Service "*regularly fails* to issue determinations in response to [Judicial Watch's] travel-related FOIA requests within the time period required by FOIA, causing [Judicial Watch] to bring suit in order to obtain the requested records." Compl. ¶ 7 (emphasis added). It points to the five lawsuits[2] it had been forced to file when the Secret Service had previously employed the same non-responsive conduct: acknowledge receipt of the FOIA requests and assign

---

[2] *See Judicial Watch, Inc. v. U.S. Secret Service*, No. 12-1562 (D.D.C. 2012); *Judicial Watch, Inc. v. U.S. Secret Service*, No. 13-0647 (D.D.C. 2013); *Judicial Watch, Inc. v. U.S. Secret Service*, No. 13-0950 (D.D.C. 2013); *Judicial Watch, Inc. v. U.S. Secret Service*, No. 14-0046 (D.D.C. 2014); *Judicial Watch, Inc. v. U.S. Secret Service*, No. 14-1732 (D.D.C. 2014).

them tracking numbers, remain mute until Judicial Watch filed a lawsuit, and only then undertake to make requested non-exempt records available, thereby mooting the litigation and escaping judicial review of its failures to comply with FOIA's procedural requirements.

Now seeking injunctive relief in view of the Secret Service's alleged flouting of the statutory scheme, Judicial Watch's complaint posits that the Secret Service has an informal practice, harmful to Judicial Watch's mission and work, of repeatedly withholding "nearly identical" records, without explanation, for unreasonable periods of time. *Id.* ¶¶ 7–9, 13–14, 22. Pointing to the FOIA requests underlying this lawsuit, Judicial Watch shows that the Secret Service made no determinations, timely or otherwise, whether it would make any of the records available. For example, on August 8, the Secret Service acknowledged receipt of the requests of July 21 and 28, 2014, for travel expenditures for President Obama's trips to New York City, Seattle, San Francisco, and Los Angeles, but had no further communication with Judicial Watch on these requests, or on twelve other requests. For three requests, the Secret Service provided a communication of an unidentified nature, but did not produce any requested records. Two requests were ignored entirely.

The Secret Service, in moving for judgment pursuant to Rule 12(c), has treated its non-responsiveness to Judicial Watch's requests as consistent with FOIA: When an agency fails "promptly" to produce requested non-exempt records or invoke an exemption within statutory timetables, the requesting party may file a lawsuit without exhausting the administrative remedy. *See* 5 U.S.C. § 552(a)(6)(C)(i). That is, failures to adhere to FOIA's pre-litigation requirements, including response deadlines and records management provisions needed to enable "prompt" determinations, do not

establish a FOIA violation and consequently cannot be the basis for a policy or practice claim. *See* Appellee Br. 17–19. In other words, the Secret Service concludes the text of FOIA allows for this interpretation because even where an agency repeatedly fails to conform to FOIA's procedural requirements in the first part of the statutory scheme, the requester can, under the second part of the scheme, file a lawsuit any time it seeks to gain access to agency records. That is, the Secret Service interprets FOIA the same way as any statute affording a right that may be vindicated by judicial enforcement; enacting FOIA's directives on pre-litigation requirements thus was unnecessary.

This interpretation is untenable for any number of reasons. Most significantly, "[t]he basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governor accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978); *see Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171–72 (2004). Non-exempt records are to be made "promptly available," 5 U.S.C. § 552(a)(3)(A), for little more than payment of copying costs. The Secret Service's interpretation renders FOIA's mandate of "prompt" response superfluous, *i.e.*, a dead letter. Judicial Watch's complaint reflects that it has repeatedly been confronted with prolonged, unexplained delays by the same agency with regard to the same type of records and that six nearly identical lawsuits have not produced any change in the Secret Service's response to its proper requests until after it has filed a lawsuit. According to the complaint, only at that point has the Secret Service conducted a search to determine whether records can be made available or are exempt from disclosure, or engaged in consultations with Judicial Watch. The government points to nothing that would suggest that in providing a judicial remedy "to secure such information from

possibly unwilling official hands," *Mink*, 410 U.S. at 80, Congress intended an agency's repeated flaunting of FOIA's pre-litigation procedural requirements to be excused once the requested records are made available upon being sued. That interpretation is inconsistent with Congress's remedial purpose in enacting FOIA to enhance government transparency subject to limited statutory exemptions, using a two-part scheme that imposed specific requirements on federal agencies. Our precedent on policy or practice claims disposes of any suggestion that Congress intended the repeated filing of lawsuits to be a practical requirement for obtaining records from an agency flaunting the statute. *See Payne*, 893 F.2d at 494 (citing *Long*, 693 F.2d at 910). Filing a lawsuit hardly ensures "prompt[] availab[ility]," 5 U.S.C. § 552(a)(3)(A), as the instant case and the five other lawsuits against this agency demonstrate, *see supra* note 2, not to mention the chilling effect that litigation costs can have on members of the public much less the burden imposed on the courts.

Therefore, a plaintiff states a plausible policy or practice claim under *Payne* by alleging prolonged, unexplained delays in producing non-exempt records that could signal the agency has a policy or practice of ignoring FOIA's requirements. As in *Payne*, the plaintiff must allege a pattern of prolonged delay amounting to a persistent failure to adhere to FOIA's requirements and that the pattern of delay will interfere with its right under FOIA to promptly obtain non-exempt records from the agency in the future. Judicial Watch's complaint meets these requirements. Given the Secret Service's repeated, prolonged, and as yet unexplained delays in making requested non-exempt records available, it cannot be gainsaid that Judicial Watch alleges sufficient facts under Federal Rule of Civil Procedure 8(a)(2) and Supreme Court precedent to "draw the reasonable inference" that the Secret Service has adopted a practice of delay, contrary to FOIA's two-part scheme, by

repeatedly standing mute over a prolonged period of time and using Judicial Watch's filing of a lawsuit as an organizing tool for setting its response priorities. *Iqbal*, 556 U.S. at 678; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The conclusion that such "unreasonable delay in disclosing non-exempt documents" is an "abuse of [FOIA's] scheme" follows ineluctably from the recognition that "Congress did not intend for the [agency] to use the FOIA offensively to hinder the release of non-exempt documents so as to "force[] the appellant[] to bring several lawsuits to obtain release of the documents." *Payne*, 837 F.2d at 494 (quoting *Long*, 693 F.2d at 910). And it is long established in this circuit that an agency's compliance with FOIA depends upon its "good faith effort and due diligence . . . to comply with all lawful demands [for records] . . . in as short a time as is possible." *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C. Cir. 1976). Congress reinforced the importance of FOIA's timetables and its overarching mandate of prompt availability when it amended FOIA in 1974. Responding to agencies' concerns about the high volume of requests and lack of resources, Congress allowed agencies only ten additional days to respond where there were "unusual circumstances." *See* 5 U.S.C. § 552(a)(6)(B). Judge Leventhal has explained:

> [T]he 1974 Amendments were deliberately drafted to *force increased expedition* in the handling of FOIA requests: "[E]xcessive delay by the agency in its response is often tantamount to denial. It is the intent of this bill that the affected agencies be required to respond to inquiries and administrative appeals within specific time limits." H. REP. No. 93-876, 93d Cong., 2d Sess. (1974). . . . The Congress even rejected a 30-

day extension provision, narrowly drafted to take account of the special exigencies facing agencies.

*Open America*, 547 F.2d at 617 (Leventhal, J., concurring in the result) (emphasis added). Much as Congress has done in adopting "technology-forcing" provisions in other contexts, *see, e.g.*, *Union Elec. Co v. EPA*, 427 U.S. 246, 256–57 (1976), Congress contemplated that agencies would improve their records management systems to ensure requested records are made "promptly available," 5 U.S.C. § 552(a)(3)(A). No authority has been cited that either the Supreme Court or this court has retreated from this understanding of FOIA's text, purpose, and history. An agency's use of a lawsuit as an organizing tool for prioritizing responses renders FOIA's requirements "insignificant, if not wholly superfluous." *Duncan v. Walker*, 533 U.S. 167, 174 (2001).

The district court, however, conceived the issue of sufficiency of pleading differently. First, it treated *Payne* and *Newport* as establishing a floor for a policy or practice claim. In contrast with what it described as the "egregious, intentional agency conduct" in *Payne* and *Newport*, the district court ruled that Judicial Watch had alleged "mere delay." *Judicial Watch*, 211 F. Supp. 3d at 147. "At best, Judicial Watch's alleged facts are merely consistent with a policy or practice claim." *Id.*; *see id.* at 145 (citing *Iqbal*, 556 U.S. at 678). This court did not require egregious agency action to state a policy or practice claim. Rather, the court stated in *Payne* that even beyond a "refusal to supply information," an agency may engage in "some *other* failure to abide by the terms of the FOIA" that could be a basis for finding the agency has an unlawful policy or practice. *Payne*, 837 F.2d at 491 (emphasis added). It would be ironic if a policy or practice claim could be based on misapplication of a FOIA exemption (as in *Payne* and *Newport*), but not on an agency's total disregard of the

obligations mandated by Congress and failure to take advantage of provisions allowing additional time to respond.

Second, the district court shifted to the requesting party the burden that FOIA places on the agency to explain its delay in making requested records available. *See, e.g.*, 5 U.S.C. §§ 552(a)(4)(B), (a)(6)(A)–(C); *ACLU v. U.S. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011). Concluding that Judicial Watch failed to show that the Secret Service had "adopted, endorsed, or implemented some policy or practice that constitutes an ongoing failure to abide by the terms of the FOIA," *Judicial Watch*, 211 F. Supp. 3d at 146 (quoting *Muttitt*, 926 F. Supp. 2d at 293), the district court focused on Judicial Watch's shortcomings in "point[ing] to no fact or statement to establish *why* the requests were delayed or *how* the delays were the result" of an agency policy or practice, "rather than an inevitable but unintended delay attributable to a lack of resources," *id.* Pretermitting whether a lack of resources could ever suffice to excuse repeated, prolonged, and as yet unexplained delay, as the district court interjected, *id.* at 147, FOIA's text and structure require that the agency "at least indicate within the relevant time period the scope of the documents it will produce and the exemptions it will claim with respect to any withheld documents." *Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 183 (D.C. Cir. 2013) ("*CREW I*"). This threshold requirement stands as a gateway to the transparency FOIA envisions.

The history of the Secret Service's conduct in response to Judicial Watch's FOIA requests, as alleged in the complaint, wherein Judicial Watch has been forced to file six lawsuits to obtain requested non-exempt records — all relating to the same subject matter — sufficed to state a plausible claim that the agency's practice was to utilize delay to flaunt FOIA's

procedural requirements, and that filing a lawsuit to obtain requested records was an empty gesture in terms of preventing future prolonged delays, much less obtaining future relief, because the agency would moot the litigation and escape judicial review of its compliance with FOIA. The Secret Service's alleged practice of prolonged, repeated, and unexplained delay, if allowed to continue, would harm Judicial Watch's mission to inform the public about the costs of VIP travel by unlawfully interfering with its statutory right to "promptly" obtain non-exempt records upon request. *See Newport*, 684 F.3d at 163–64.

Of course, not all agency delay or other failure to comply with FOIA's procedural requirements will warrant judicial intervention, much less injunctive relief. FOIA's provisions for extensions of response time, where for example the agency shows "exceptional circumstances exist" upon "demonstrat[ing] reasonable progress in reducing the backlog of pending requests," 5 U.S.C. § 552(a)(6)(C), indicate as much. Even assuming for purposes of argument that Congress intended the judicial remedy to be a principal means to overcome unlawful agency withholding — an interpretation of FOIA that this court has long rejected — no authority has been cited to suggest agencies may require a requester routinely resort to court to obtain responsive non-exempt records. It seems doubtful such authority would exist when agency "good faith effort and due diligence" are the touchstones underlying FOIA's statutory scheme. *Open America*, 547 F.2d at 616.

Unexplained agency delay still requires the district court to determine whether the agency's conduct in failing to conform to FOIA's procedural requirements demonstrates a lack of due diligence and is so delinquent or recalcitrant as to warrant injunctive relief because ordinary remedies, such as a production order, *see* 5 U.S.C. § 552(a)(4)(B), would be

inadequate to overcome an agency policy or practice. *See Ctr. for the Study of Servs. v. Dep't of Health & Human Servs.*, 874 F.3d 287, 292 (D.C. Cir. 2017); *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 846 F.3d 1235, 1242, 1246 (D.C. Cir. 2017) ("*CREW II*"); *Newport*, 684 F.3d at 164; *Payne*, 837 F.2d at 491; *Lybarger*, 577 F.2d at 767. When injunctive relief is sought, "the necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *U.S. v. W.T. Grant Co.*, 345 U.S. 629, 633 (1952). Factors to be "considered are the *bona fides* of the expressed intent to comply, the effectiveness of the discontinuance [of the violation] and, in some cases, the character of the past violations." *Id.* In the FOIA context, "the court's prime consideration should be the effect on the public of disclosure or non-disclosure." *Long*, 693 F.2d at 909 (citing *W.T. Grant*, 345 U.S. at 633). And as Congress's limited reaction in amending FOIA suggests, staffing shortages and work overload may not render injunctive relief inappropriate. *See Open America*, 547 F.2d at 616; *id.* at 617 (Leventhal, J., concurring in the result). The indication by government counsel during oral argument that an agency might permissibly use litigation as an organizing tool for responding to FOIA requests, *see* Oral Arg. 25:18–26:59, is not an encouraging sign.

Our dissenting colleague's interpretation of FOIA raises the question why Congress bothered to enact FOIA at all. After all, prior to FOIA, a person could request agency records and upon failing to obtain them seek relief in court, albeit an expensive and time-consuming process. Yet neither agency practices nor lawsuits under the prior statutory scheme resulted in transparency of government operations. The Supreme Court and this court have understood that Congress's purpose in enacting FOIA was to achieve greater transparency in support

of open government, and that to accomplish this goal it placed the burden on agencies to act in good faith and exercise due diligence to make records available as quickly as possible, or invoke an exemption, and to improve their records management systems to enable prompt responses without routine judicial involvement. Our colleague's interpretation would bypass Congress's decision about how this goal can best be achieved.

In doing so, our colleague concludes Judicial Watch's complaint fails to state a claim for relief based on a policy or practice. Diss. Op. 2, 7–8. He does this by reading the complaint narrowly despite the Rule 8 stage of the proceedings, *Mpoy*, 758 F.3d at 287 (citing *Iqbal*, 556 U.S. at 678–79), ignoring factual allegations that must be accepted as true, reasonable inferences from the detailed chart accompanying the complaint, and the context in which Judicial Watch was forced to file this sixth lawsuit against the same agency for release of the same type of records. His reading renders FOIA's requirements insignificant at best and effectively reinstates the pre-FOIA scheme. When properly read, the complaint alleges that the Secret Service continues to abuse the statutory scheme and repeatedly moot litigation to escape judicial oversight, thereby denying Judicial Watch the prompt transparency that Congress intended in enacting FOIA.

Further, our colleague proceeds to address whether Judicial Watch could prevail beyond the Rule 8 pleading stage. He misreads the record and speculates on how the government might have responded had the complaint not been dismissed, Diss. Op. 10–16, thereby placing a pleading burden on Judicial Watch beyond what Rule 8 requires and flipping to the requester the burden that FOIA places on the agency to explain its delay. The record at the time the district court granted the government's Rule 12(c) motion shows that the Secret Service

had done nothing beyond acknowledging receipt and assigning tracking numbers to most of Judicial Watch's requests. The record provides no basis to assume Judicial Watch was kept informed of what, if anything, the Secret Service had done in responding to its requests, *see* Diss. Op. 13; paragraphs 8–12 of the complaint allege to the contrary. In speculating about the government's explanation, our colleague embraces the idea that taking "hundreds of days to process requests," Diss. Op. 9, is a permissible interpretation of an agency's obligations under FOIA, when the statutory structure and our precedent in *CREW I*, 711 F.3d at 186–87, are to the contrary. He twists the congressional reporting requirement, Diss. Op. 9, designed to *enable* Congress to ensure agency compliance with FOIA into evidence of congressional approval of agency failure to comply. *See, e.g.*, S. REP. 93-854, at 32–33 (May 16, 1974); H.R. REP. 104-795, at 7, 14, 27–29 (Sept. 17, 1996); *see also* S. REP. 110-59, at 2, 7 (Apr. 30, 2007). And by conjuring up the notion that Judicial Watch's requests were "complex," Diss. Op. 10–11, our colleague again fails to read the record as it must at this Rule 8 stage. Even on appeal the Secret Service has not characterized Judicial Watch's requests as complex.

Accordingly, we reverse the Rule 12(c) judgment on the request for injunctive relief and remand Count II to the district court for further proceedings. Our disposition conforms to longstanding precedent interpreting agencies' obligations of "good faith effort and due diligence" upon receiving a FOIA request. *Open America*, 547 F.2d at 616. The district court is no less obligated to determine upon a well-pleaded complaint that an agency has organized its records management systems to enable prompt determinations to produce records or to invoke an exemption, and to monitor when necessary an agency's progress in adjusting its records management systems to enable it to comply with FOIA. *See Ctr. for the Study of Servs.*, 874 F.3d at 292; *CREW II*, 846 F.3d at 1246. The

government's suggestion that Judicial Watch seeks a broad injunction requiring the Secret Service to prioritize its responses to Judicial Watch's future FOIA requests, thereby "distort[ing] the statutory scheme" and resulting in harm to "other members of the public who have an equal right to seek information from the government," Appellee Br. 21–22, is not well-taken.  The Secret Service will have the opportunity on remand to explain its delays and to confirm how it intends in the future to conform to FOIA's mandate to make requested non-exempt records "promptly available."  The district court, upon considering the complaint and the parties' further submissions, will determine, in the first instance, the appropriateness of discovery and tailored injunctive relief.

PILLARD, *Circuit Judge*, concurring:

I join the majority opinion in full. In view of the disagreement between my colleagues, I write separately to emphasize what I see as the alleged Freedom of Information Act (FOIA) violations, and to spell out how, because the complaint alleges a persistent "practice" of violating FOIA, the Secret Service's production of records in response to Judicial Watch's lawsuit did not render the claims moot.

Judicial Watch wants to keep the public informed of how much taxpayer money is spent on travel by the First Families and others who travel under Secret Service protection. FOIA is designed to make such a project easy and inexpensive. Under FOIA, information showing "what [the] government is up to," *EPA v. Mink*, 410 U.S. 73, 105 (1973) (Douglas, J., dissenting), is presumptively available for the asking—no lawyer needed—to any person at little or no cost. But it has not worked out that way for Judicial Watch. The organization has had to wait for many months, and to devote resources that would be unaffordable to most requesters to file half a dozen lawsuits, just to get this simple information.

Judicial Watch alleges a continuing practice of virtually complete passivity by the Secret Service in responding to the series of straightforward requests that Judicial Watch alleges it has made and plans to continue to make. In these circumstances, a complete but belated response does not moot the case. The statute "does not allow agencies to keep FOIA requests bottled up for months or years on end while avoiding any judicial oversight." *Citizens for Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180, 190 (D.C. Cir. 2013) (*CREW*). Because the pleadings show no statutorily adequate explanation for the agency's persistent practice of alleged delays in violation of FOIA, the district court retains jurisdiction over whatever further proceedings are needed to determine whether declaratory or injunctive relief is

appropriate.  On remand, the district court should call on the Secret Service either to bring its FOIA process into line with the statute, or to explain to the court's satisfaction that it has already done so.

* * *

When a member of the public makes a request for government records, FOIA requires the agency to "determine within 20 days" what responsive records it has and can produce consistent with FOIA's exemptions, 5 U.S.C. § 552(a)(6)(A)(i), to "immediately" notify the requester of its determination, *id.*, and to follow up by making nonexempt records "promptly available," *id.* § 552(a)(3)(A).  FOIA thus sets a default 20-day deadline for the underlying *determination*, and simply requires that the ensuing *production* of records be made to the requester "promptly" thereafter.  These requirements are tied together, for Congress plainly intended production of records to follow close on the heels of the determination.  As we explained in *CREW*, "promptly" under Section 552(a)(3)(A) "typically would mean within days or a few weeks of a 'determination,' not months or years."  *See CREW*, 711 F.3d at 188-89.

There is no doubt that Congress intended FOIA's time limits to be mandatory.  *See Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 617 (D.C. Cir. 1976) (Leventhal, J., concurring) ("Excessive delay by the agency in its response is often tantamount to denial.  It is the intent of this bill that the affected agencies be required to respond to inquiries . . . within specific time limits.") (quoting H.R. Rep. No. 93-876, 93d Cong., 2d Sess. (1974)).  Our dissenting colleague minimizes the importance of the 20-day deadline for the agency to make its determination by noting that, once an agency exceeds it, the requester is released from FOIA's

administrative exhaustion requirement. *See* Diss. Op. 4-5, 8. He infers from its relevance to exhaustion that the 20-day deadline is somehow not itself enforceable. *Id.* We have never so held, nor need we pass on that question today. The violations alleged here are not limited to missing the 20-day deadline, but include the Secret Service's additional failures to make the responsive records "promptly available." 5 U.S.C. § 552(a)(3)(A). Suffice it to say that no court of which we are aware has given Section 552(a)(6)(A)(i)'s 20-day default deadline the restricted role the dissent envisions, whereas at least one sister circuit reads it to support a legal challenge where an agency responded "well beyond the twenty-day limit" without "notice of any 'unusual circumstances' justifying an extension." *Hajro v. U.S. Citizenship & Immigration Servs.*, 811 F.3d 1086, 1106-07 (9th Cir. 2015).

Regardless whether ignoring the 20-day deadline is alone actionable, there is no question that substantial delays can support cognizable FOIA claims: We have held that "unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent these abuses." *Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988) (quoting *Long v. IRS*, 693 F.2d 907, 910 (9th Cir. 1982)); *cf. McGehee v. CIA*, 697 F.2d 1095, 1110 (D.C. Cir. 1983) (holding that an agency's internal procedures for processing documents may violate FOIA where the "net effect" is "significantly to increase the amount of time [the requester] must wait to obtain them"). Faced with information suggesting that "an agency's responses to a request for information have been tardy and grudging, courts should be sure they do not abdicate their own duty." *McGehee*, 697 F.2d at 1114. Allegations of an agency's unexplained delay—here, alleged failures for several months to respond to simple requests to make responsive, non-exempt records "promptly available"—suffice to state a FOIA claim.

When, as often happens, an agency voluntarily produces requested records during the course of a lawsuit, that production typically satisfies the requester and ends the case. But not always. Voluntary cessation of unlawful conduct moots a case, as a general matter, only "if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000). Moreover, "[t]he heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Id.* In the FOIA context, an ongoing agency "policy or practice" of unlawful nondisclosure may mean the voluntary release of responsive records "does not deprive the tribunal of power to hear and determine the case, *i.e*., does not make the case moot." *Payne*, 837 F.2d at 490 (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953); citing *Cty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979)); *see Newport Aeronautical Sales v. Dep't of Air Force*, 684 F.3d 160, 163-64 (D.C. Cir. 2012); *Hajro,* 811 F.3d at 1103, 1106; *Mayock v. Nelson*, 938 F.2d 1006 (9th Cir. 1991). A plaintiff plausibly alleging that its plans to request similar agency records will be stymied by an ongoing practice of unjustified delays may be entitled to injunctive or declaratory relief.

The question here is whether Judicial Watch has adequately alleged such a practice. The answer is yes.

Over a period of years, Judicial Watch routinely asked for "VIP travel" expense information it wanted to include in reports to its interested public. *See* Compl. ¶ 16, *Judicial Watch, Inc. v. Dep't of Homeland Sec.*, 15-cv-1983 (D.D.C. Nov. 10, 2015). Judicial Watch alleges that the agency failed, time and again, to make prompt disclosure. When Judicial

Watch filed this suit, the nineteen sequential requests at issue here had been pending for anywhere from seven to fifteen months without a single determination—let alone production—on any of the requested travel-expense information. *Id.* at Ex. A. Judicial Watch's complaint also references five preceding lawsuits, involving an earlier sequence of ten requests, seeking the very same kind of information as the nineteen requests at issue here. *Id.* ¶ 7. Each of those requests had likewise been pending for several months before Judicial Watch filed each related lawsuit. *See id.*

With allegations of 29 similar requests across six lawsuits met by unexplained months of waiting for the Secret Service to produce responsive records, the complaint makes out a consistent practice of delay in violation of FOIA. Even though the 20-day deadline had elapsed many times over, the Secret Service admits that it had not made the requisite "determinations." *See* 5 U.S.C. § 552(a)(6)(A)(i); Compl. ¶¶ 13-16; Answer ¶ 14, *Judicial Watch*, 15-cv-1983 (D.D.C. Dec. 22, 2015). Nor did it give plaintiff written notice of any "unusual circumstances" that might have entitled it to an additional ten working days to make its determinations. *See* 5 U.S.C. § 552(a)(6)(B)(i). The statute obligates the agency to reach out to requesters if it will not meet the initial 20-day deadline in order to negotiate potential efficiencies, such as by agreeing to an alternative timeframe for processing or by narrowing a request "so that it may be processed within [the 20-day] time limit," *see id.* § 552(a)(6)(B)(i), (ii), (iii), but there is no indication that the Secret Service made any such overtures to Judicial Watch, *see* Compl. ¶ 14; Answer ¶ 14. For most of the nineteen requests at issue in this suit, the Secret Service simply assigned a tracking number and provided no further communication to Judicial Watch, *see* Compl. ¶ 11; for some of the requests, the agency failed to do even that much, *id.* ¶ 10. The Secret Service made no production of the records

before it faced litigation—and even when each earlier lawsuit eventually dislodged some requested records, the cycle began again with ensuing requests. None of the eventual production was within a timeframe that our cases accept as "prompt" in the absence of any justification from the Secret Service. *See* 5 U.S.C. § 552(a)(3)(A); *CREW*, 711 F.3d at 189. The allegations, considered together with reasonable inferences therefrom drawn in Judicial Watch's favor, make out a persistent Secret Service practice of violating FOIA's requirements for making nonexempt government records promptly available to the public.

At the pleading stage, we lack critical context about the alleged delays and so cannot simply assume and unquestioningly accept that they are justified. To be sure, what counts as prompt production varies "depending on the circumstances." *CREW*, 711 F.3d at 188. But if we were to hold that the circumstances alleged here, without more, satisfied the Secret Service's statutory duties under FOIA, the roles Congress assigned the courts as the primary enforcer of FOIA and agencies as the proactive stewards of FOIA's implementation would be substantially undermined.

Consider the character of the requests themselves. The requested records are generally in the form of receipts—evidencing, for example, expenditures for flights, rental cars, and hotels—subject to only routine redactions under FOIA's exemptions. *See, e.g.*, U.S. Secret Service, Response to FOIA Request Number 20131414 (June 12, 2014), http://www.judicialwatch.org/wp-content/uploads/2014/10/2323_Responses.pdf.[1] It is a familiar fact of life to the

---

[1] These records were produced in response to one of Judicial Watch's travel-related FOIA requests, *see* Compl. ¶¶ 21-24, *Judicial Watch v. U.S. Secret Service*, 14-cv-0046 (D.D.C. Jan. 13, 2014), that was the subject of an earlier Judicial Watch suit; the current complaint refers to that request

hundreds of millions of people in the United States who travel each year for their work that employers collect and process travel expense information regularly; any adequately functioning organization should be able to produce travel expense information with dispatch. There is no suggestion that the requests at issue in this case involve any subtle relevance questions about where or how to search, or cumbersome inter-agency collaboration to identify what information is kept, and where it might be found. *Cf. McGehee*, 697 F.2d at 1098-99. The Secret Service presumably already keeps and electronically tracks government-paid travel expense information for any number of internal reasons. And, by now, Judicial Watch's repeated requests themselves may provide an additional reason for it to do so: FOIA obligates agencies to take initiative—even in the absence of a further request—to facilitate public access to commonly sought information, such as by publishing it in advance, *see* 5 U.S.C. § 552(a)(2)(D), and fast-tracking simple requests, *id*. § 552(a)(6)(D); *see also* U.S. Dep't of Homeland Sec., *2018 Chief FOIA Officer Report to the Attorney General of the United States* 22-23 (Mar. 2018), https://www.dhs.gov/sites/default/files/publications/2018%20 Chief%20FOIA%20Officer%20Report.pdf (*2018 DHS Chief FOIA Officer Report*) (describing "Steps Taken to Increase Proactive Disclosures," and asserting that the Secret Service has begun posting at least some travel expense information in advance of requests). For all one can glean from the pleadings, Judicial Watch's requests are wholly mundane.

The dissent, however, assumes the requests are "complex," Diss. Op. 11, and finds their processing time reasonable in light of the average "complex" request processing times listed in a Secret Service FOIA report. *See*

---

and lawsuit, among others, in alleging the persistent practice of slow responses. *See* Compl. ¶ 7.

*id.* (citing U.S. Dep't of Homeland Sec., *2015 FOIA Report to the Attorney General of the United States* 5, Table V.A. (Feb. 2016), https://go.usa.gov/xXQVvf). That FOIA report, however, was not incorporated in any pleading. It was not even mentioned in briefing. At the pleading stage, as the district court correctly recognized, *Judicial Watch v. Dep't of Homeland Sec.*, 211 F. Supp. 3d 143, 145 n.1 (D.D.C. 2016), we confine our review to the allegations, *see Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015). In any event, the FOIA report says nothing about how these requests compare with those the Secret Service itself denominated as "complex," in terms of the difficulty and time needed to process them. We are here required to make the reasonable inference in Judicial Watch's favor that its VIP-travel expense requests are wholly straightforward; it is open to the agency on remand to seek to show otherwise.

In sum, Judicial Watch has plausibly alleged a persistent practice of delay that violates FOIA's mandate to make responsive records "promptly available." *See* 5 U.S.C. § 552(a)(3)(A). At the pleading stage, no more is required to support the district court's jurisdiction to consider, in view of the agency's potential justifications, any need for equitable relief.

Our dissenting colleague sees no allegations of delay that could violate FOIA. *See* Diss. Op. 12. His main point is that agencies cannot be expected to respond *post haste* to every one of the thousands of FOIA requests that agencies today receive. But to assume at the pleading stage that an agency faces hurdles and can offer rationales that were never pleaded or proved contravenes both Federal Rule of Civil Procedure 12(c) and FOIA itself. We are well aware that FOIA processing is no picnic: It can be painstaking and sometimes highly technical for requestors, agencies, and courts alike. But FOIA

nonetheless requires each federal agency to swiftly disclose all nonexempt information, even as it must accurately sort and withhold information that falls within the statute's exemptions. Needless to say, busy agencies, ever pressed to do more with limited resources, lack incentives to get that done. That is precisely why Congress enacted FOIA's timeframes and authorized district courts to enjoin agencies from improperly delaying public access to non-exempt records.

The statute places the burden on the agency, not the FOIA requester, to justify delays in processing. Once an agency has been sued in district court for improperly withholding records, "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B). *But see Judicial Watch*, 211 F. Supp. 3d at 147; Diss. Op. 13. FOIA requires an agency that has not made prompt production to explain its delinquency: It allows additional processing time only "[i]f the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request." *See* 5 U.S.C. § 552(a)(6)(C)(i). The statute spells out that "exceptional circumstances" do "not include a delay that results from a predictable agency workload of requests" unless the agency affirmatively shows that it is making "reasonable progress in reducing its backlog of pending requests." *Id.* § 552(a)(6)(C)(ii). It is emphatically not permissible under FOIA for a court simply to assume that an agency's circumstances are "exceptional." There is no ground on this record for relieving the Secret Service of its burden of justification and simply presuming the Secret Service is systemically entitled to the "additional time" referred to in Section 552(a)(6)(C)(ii).

A few additional points: The dissent contends that, by requiring agencies to issue reports on the number of delayed requests and to provide tracking numbers to requesters, FOIA

expressly tolerates across-the-board, prolonged waits for production of nonexempt information. *See* Diss. Op. 3, 9. But nothing about FOIA's reporting and tracking mechanisms suggests they excuse violations of the statute's "determination" deadline or its expectation that, once a determination is made, a requester will be "immediately" informed and responsive records will be produced "promptly." FOIA excuses slow processing of nonexempt information only when the agency has carried its burden to justify withholding records, 5 U.S.C. § 552(a)(4)(B), and to explain how its delays are warranted by "exceptional" circumstances, *id.* § 552(a)(6)(B), (C)(i). In short, the statute does not condone agency personnel sitting behind accumulating mounds of FOIA requests and requiring each requester to "take a number" and wait many months or years for the agency to comply. It is innovation-forcing, requiring agencies to consider "adjustments to . . . practices, policies, personnel, and funding as may be necessary to improve its implementation of" the statute, including "the timely processing of requests for information." *See id.* § 552(j)(2)(C), (3)(D); *see also 2018 DHS Chief FOIA Officer Report*, at 26-27 (discussing "Steps Taken to Greater Utilize Technology").

Recognizing that Judicial Watch has stated a policy or practice claim here imposes no new or untenable burdens on agencies. Our circuit has recognized the "policy or practice" doctrine for thirty years. *See Newport Aeronautical Sales*, 684 F.3d at 164 (recognizing that, "even though a party may have obtained relief as to a *specific request* under the FOIA, this will not moot a claim that an agency *policy or practice* will impair the party's lawful access to information in the future") (emphasis in original) (citing *Payne*, 837 F.2d at 489). District courts, moreover, have many tools at their disposal to focus and streamline inquiry into whether the agency's production times are justified. *See generally* Fed. R. Civ. P. 26(b)(2)(c);

*McGehee*, 697 F.2d at 1112-13 (discussing reliance on agency affidavits at the summary judgment stage in FOIA exemption dispute).

In considering the propriety of injunctive or declaratory relief, the district courts should be mindful of their "duty to prevent . . . abuses" of FOIA. *Payne*, 837 F.2d at 494. They should assess whether an agency is acting with due diligence and making reasonable progress in reducing backlogs, including by availing itself of tools to improve its efficiency.

\* \* \*

Congress in FOIA expressed a national commitment to open government. A democratic society requires an informed citizenry—not only to check against corruption and to hold government accountable, but also to dispel misconceptions and fallacies that secrecy feeds. As widely emulated as it has been here and abroad, FOIA is not the only—or necessarily the best—way to make the workings of government as open as practicable to the people in whose name its officials wield power and resources. *See generally* David E. Pozen, *Freedom of Information Beyond the Freedom of Information Act*, 165 U. Pa. L. Rev. 1097 (2017). Nevertheless, as Congress enacted and we have applied it, FOIA supports Judicial Watch's "policy or practice" claim. I thus join the opinion of the court holding that the Secret Service did not defeat the district court's jurisdiction to consider whether equitable relief might still be warranted even though—after repeatedly failing for months to respond to simple requests—it provided the information in full after the lawsuit was filed.

SRINIVASAN, *Circuit Judge*, dissenting:  The Freedom of Information Act serves the important aim of promoting the timely release of requested government records.  Ordinarily, when an agency completes its review of a request and releases responsive records during the pendency of a FOIA action, the case becomes moot.  The case is not moot, however, if the agency has a general, ongoing policy or practice of violating FOIA.  In that event, the court can enjoin the unlawful agency policy or practice going forward.

The complaint in this case claims that the Secret Service has a policy or practice of unlawfully withholding the release of requested records in violation of FOIA.  The question we face is whether the complaint's allegations, if true, establish a policy or practice of violating FOIA.  My colleagues conclude that the answer is yes.  I respectfully disagree.

This case involves nineteen requests for records submitted to the Secret Service by Judicial Watch.  The complaint's salient allegations are that (i) the agency failed to determine whether it would produce the requested records within a twenty-day period set out in the statute, (ii) several months had elapsed without any production of records by the time this suit was filed, and (iii) the agency, in past cases involving the same sorts of requests by Judicial Watch, ultimately produced the records after the filing of a suit.  Do those allegations make out a policy or practice of FOIA violations?  In my view, they do not.

With regard to the statute's default twenty-day period for determining whether to produce requested records, an agency's failure to make that determination within twenty days is not an actionable violation of FOIA.  Nor was it necessarily a violation of FOIA that the requests were still pending before the agency when the suit was filed.  Indeed, the statute expressly contemplates that an agency could take several months to process a FOIA request, and agencies regularly—

and lawfully—take that long to determine whether to produce requested records. And while it may be true that the Secret Service has previously produced records after Judicial Watch filed suit (and did so again in this case), the mere fact that an agency produces records following the initiation of judicial proceedings tells us nothing about whether the non-production of the documents before that point violated the statute. In short, the allegations in the complaint, even if true, are consistent with lawful conduct under FOIA.

The complaint in this case therefore fails to allege a policy or practice of violating FOIA. By deciding otherwise and allowing this action to go forward, the court today enables FOIA suits to proceed past the pleadings in a broad range of situations in which an agency's practices are fully in keeping with the statute's requirements. Agencies often (and lawfully) take significantly longer than twenty days to process a FOIA request. But an agency that does so, under the court's rationale today, would routinely be subject to an ostensibly viable claim that it has a policy or practice of violating the statute. The statute, in my respectful view, does not countenance that result.

I.

A.

To understand why the complaint in this case fails to allege a policy or practice of violating FOIA, it is necessary to review in some detail the statute's provisions governing the processing of a request for records. Upon a proper request for records submitted by "any person," FOIA generally calls for a federal agency to make the requested records "promptly available" to the requester unless the records fit within one of the statutory exemptions. *See* 5 U.S.C. § 552(a)(3)(A). Depending on the nature of a request, identifying and examining responsive records, and determining whether an exemption applies, can

take considerable time. FOIA thus prescribes no fixed timeframe within which an agency must produce non-exempt records. Rather, the statute establishes a set of procedures for agencies (and requesters) to follow in furtherance of the general mandate to make non-exempt records promptly available.

Whenever the agency will take longer than ten days to process a request, the statute requires the agency to assign the requester an "individualized tracking number." *Id.* § 552(a)(7)(A). The tracking number enables the requester to obtain "information about the status of [her] request" through a "telephone line or Internet service" set up by the agency. *Id.* § 552(a)(7)(B). The "status" information available to the requester must include "an estimated date on which the agency will complete action on the request." *Id.* § 552(a)(7)(B)(ii). A requester, then, can readily ascertain when the agency anticipates "complet[ing] action on the request." *Id.*

How long might that take? As a default matter, FOIA provides that an agency "shall . . . determine within 20 [business] days . . . whether to comply with [a] request" for records, and "shall immediately notify" the requester "of such determination and the reasons therefor." *Id.* § 552(a)(6)(A)(i). That "determination" marks the culmination of an agency's processing of a FOIA request—i.e., the determination by the agency whether it will produce the requested records or instead will withhold any production of records (because, for instance, a FOIA exemption applies or there are no responsive records).

The statute does not envision that an agency invariably will be able to process a request within the twenty-day period. That "timeline is not absolute." *Citizens for Responsibility & Ethics in Wash. (CREW) v. FEC*, 711 F.3d 180, 184 (D.C. Cir. 2013). It is instead only a "default." *Id.* at 189. After all, "it

would be a practical impossibility for agencies to process all FOIA requests completely within twenty days." *Id.* (brackets and internal quotation marks omitted).

For instance, in the event of certain "unusual circumstances" specified in the statute, the agency can extend the time period for processing a request by an additional ten business days (or thirty days total). 5 U.S.C. § 552(a)(6)(B)(i). (Unusual circumstances exist when a request: requires accessing records in an off-site location, involves a "voluminous amount" of records, or implicates the interests of multiple agencies or components. *Id.* § 552(a)(6)(B)(iii).) The statute, moreover, affirmatively contemplates that those "unusual circumstances" could cause the agency to take longer than thirty days to process a request. In that event, the agency must give the requester the opportunity to limit the scope of her request or work with the agency to develop an alternative time frame for processing it. *Id.* § 552(a)(6)(B)(ii).

In addition, apart from the enumerated "unusual circumstances," the statute separately allows an agency to show that "exceptional circumstances" (as opposed to "unusual circumstances") exist, and that the agency "is exercising due diligence in responding to the request." *Id.* § 552(a)(6)(C)(i). In that event, the agency is allowed "additional time to complete its review of the records." *Id.* "Exceptional circumstances" can "include a delay that results from a predictable agency workload of requests" if "the agency demonstrates reasonable progress in reducing its backlog of pending requests." *Id.* § 552(a)(6)(C)(ii). The statute thus expressly envisions that an agency could have a backlog of FOIA requests preventing it from processing a new request within twenty days, and that the agency would be allowed additional time as long as it is making reasonable progress in reducing the backlog.

The "exceptional circumstances" determination is made by a court after a requester initiates the statute's process of judicial review. *See id.* § 552(a)(6)(C). FOIA vests district courts with jurisdiction to conduct a de novo review of an agency's processing of a request, and to enjoin the agency from any "improper[] withh[olding]" of responsive records. *Id.* § 552(a)(4)(B). Ordinarily, a requester must exhaust her remedies with the agency before bringing the matter to court. *See Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004). But a requester is deemed to have constructively exhausted her administrative remedies if an agency takes longer than the default twenty-day period to process her request. 5 U.S.C. § 552(a)(6)(C); *see CREW*, 711 F.3d at 182, 185.

At that point, the requester, if she wishes, can proceed directly to court rather than continue to pursue the matter within the agency. Once in court, the agency has the burden to justify any decision to withhold responsive documents, 5 U.S.C. § 552(a)(4)(B), or to show that, due to exceptional circumstances (potentially including a backlog of FOIA requests), the agency needs additional time to process a request, *id.* § 552(a)(6)(C).

B.

If an agency produces the requested records while the matter is pending in court, the aim of the requester's claim for the records would have been realized and her claim generally becomes moot. *See Payne Enters., Inc. v. United States*, 837 F.2d 486, 490-91 (D.C. Cir. 1988). In the ordinary case, then, an agency's production of the requested records will occasion a dismissal of the requester's suit.

As our court recognized in *Payne*, however, an agency's production will not "moot a claim" if "an agency policy or practice will impair the party's lawful access to information in

the future." *Id.* at 491 (emphasis omitted). A requester thus can avoid dismissal on mootness grounds by plausibly alleging: first, that the "agency's refusal to supply information evidences a policy or practice of delayed disclosure or some other failure to abide by the terms of the FOIA," and, second that the agency's policy or practice will continue to injure the requester in the future. *Id.* In other words, a requester can maintain her action, notwithstanding the agency's production of the requested records, if the agency follows a policy or practice of unlawfully withholding records under FOIA and might continue to do so absent judicial intervention. Otherwise, an agency could have a policy of unlawfully refusing to release responsive documents, produce the documents when (and only when) sued in order to moot a given case, and then resume its unlawful withholding policy thereafter.

We have recognized the viability of a requester's policy-or-practice claim on just two prior occasions. Both cases involved an agency's allegedly unlawful withholding of documents based on an erroneous assertion of a FOIA exemption. *See id.* at 487; *Newport Aeronautical Sales v. Dep't of Air Force*, 684 F.3d 160, 163-64 (D.C. Cir. 2012). In each case, we allowed the requester to proceed on a policy-or-practice claim notwithstanding the agency's production of the requested documents. We did so because of the risk that the agencies would continue to withhold responsive records in the future in reliance on an inapplicable statutory exemption.

II.

Unlike the requesters in *Payne* and *Newport*, Judicial Watch does not contend that the Secret Service has a policy or practice of withholding requested records based on the agency's erroneous invocation of a FOIA exemption. Rather, Judicial Watch alleges that the Secret Service "has a policy and

practice of . . . regularly failing or refusing to produce requested records or otherwise demonstrate that requested records are exempt from production within the time period required by FOIA or at least within a reasonable period of time." Compl. ¶ 22. Judicial Watch's claim of an unlawful agency practice thus pertains solely to the time taken by the agency to process its records requests: there is no allegation that the agency is acting unlawfully in any other way, such as by refusing to produce records in invalid reliance on an inapplicable exemption.

In its complaint, Judicial Watch alleges the following facts in support of its claim that the Secret Service has a policy or practice of violating FOIA. Between July 2014 and August 2015, Judicial Watch submitted the nineteen FOIA requests at issue in this case. The statute's default twenty-day period elapsed without any determination by the Secret Service whether it would comply with the requests. By the time Judicial Watch filed suit (in November 2015), the agency had yet to complete its processing of the requests. And, on five previous occasions in which the Secret Service had failed to make a determination on Judicial Watch's request within twenty days, the agency produced the requested records after Judicial Watch filed suit. Compl. ¶¶ 7-9, 13-14.

Those factual allegations, in my view, do not state a claim that the Secret Service has a policy or practice of violating FOIA. The complaint advances two potential theories of how the Secret Service has engaged in a policy or practice of violating FOIA: first, the agency repeatedly failed to make determinations on Judicial Watch's requests "within the time period required by FOIA," Compl. ¶ 22—i.e., the default twenty-day period, § 552(a)(6)(A); and second, the agency failed to produce responsive documents over a sixteen-month

period between the submission of the first request and the filing of the suit. Neither of those theories states a claim for relief.

## A.

Judicial Watch first argues that the Secret Service repeatedly failed to make determinations on its requests within twenty days, as with the nineteen requests at issue in this case and the five previous cases identified in the complaint. But the lapse of the default twenty-day period is not itself an actionable violation of FOIA. A repeated lapse of the twenty-day period, then, cannot form the predicate of a viable policy-or-practice claim.

The failure to process a FOIA request within twenty days, while not itself an actionable FOIA violation, does have a consequence under the statute. In that event, the requester can bypass the normal requirement to seek administrative review of an adverse determination on her request and instead proceed directly to district court. *See* 5 U.S.C. § 552(a)(6)(A)(i)-(ii), (C)(i); *see CREW*, 711 F.3d at 185, 189-90. The court then would conduct a de novo review of the agency's processing of the request. *See* 5 U.S.C. § 552(a)(4)(B).

The court would not, though, grant judgment in the requester's favor merely because the default twenty-day period had elapsed without a determination by the agency. Rather, the statute presupposes that the court could recognize that the agency should be given additional time to process the request. That would be warranted if, as we have seen, the agency shows it "is exercising due diligence in responding to the request" and is making "reasonable progress in reducing [a] backlog of pending requests." *Id.* § 552(a)(6)(C)(i),(ii). Given that the agency can lawfully take additional time to process a request, the mere lapse of the twenty-day period does not establish that the agency has violated FOIA.

Other provisions in the statute reinforce that a lapse of the twenty-day period cannot itself amount to a FOIA violation. The requirement to provide a tracking number for any request "that will take longer than ten days to process," *id.* § 552(a)(7)(A), presupposes that an agency might often require more than twenty days to complete its review. Otherwise, a tracking number would have relevance only for a request that the agency anticipates will take more than ten days but less than twenty days, an implausible reading of the statute.

Indeed, FOIA expressly contemplates that an agency could take hundreds of days to process requests. The statute calls for each agency to submit an annual report to the Attorney General setting out, among other things, the number of requests to which the agency made a determination within specified ranges of business days. Each agency must, for example, identify the number of requests for which it made a "determination within a period up to and including 20 days, and in 20-day increments up to and including 200 days." *Id.* § 552(e)(1)(G)(i). The agency must also specify the number of requests it processed within a period of 200-300 business days, 300-400 business days, and greater than 400 business days. *Id.* § 552(e)(1)(G)(ii)-(iv). Congress thus expressly envisioned that an agency might, with some regularity, take several hundred days or more—not just twenty days—to process a request.

Judicial Watch then errs in supposing that a lapse of the default twenty-day timeframe for processing a request constitutes an actionable violation of FOIA. It follows that the complaint cannot state a viable policy-or-practice claim based on the Secret Service's failure to make a determination within the twenty-day period for the requests at issue.

10

B.

Judicial Watch's complaint also states that the Secret Service has a policy or practice of failing to produce requested records "within a reasonable period of time." Compl. ¶ 22. That contention perhaps could be construed to allege that, even if the lapse of the twenty-day period does not itself establish a FOIA violation, the Secret Service's failure to make determinations within a "reasonable" time (beyond twenty days) infringed FOIA's overarching mandate to make records "promptly available." *Id.* § 552(a)(3)(A). That, however, is a legal conclusion, which we do not accept as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The legal conclusion instead must rest on plausible factual allegations that, if true, would establish the unlawfulness of the agency's action. *Id.*

Judicial Watch alleges no such facts here. Judicial Watch contends that, by the time it filed suit in November 2015, the Secret Service had yet to produce records responsive to nineteen requests submitted between July 2014 and August 2015. *See* Compl. ¶¶ 8, 14. The requests had been pending for between 54 and 329 business days. *Id.* Ex. A. The complaint contains no allegations suggesting why those time periods might be considered unreasonably—much less unlawfully— long. Rather, even assuming Judicial Watch's allegations are true, the Secret Service might well have been working through the nineteen requests in a reasonable and lawful manner. Indeed, the statute, as explained, expressly envisions that agencies may take hundreds of days or more to process requests. *See* 5 U.S.C. § 552(e)(1)(G)(i)-(iv).

Consider in that regard how the response times for the requests in this case stack up when compared with the Secret Service's general processing of FOIA requests in 2015, the year the complaint was filed. The Secret Service processed

roughly 1200 requests that year. U.S. Dep't of Homeland Security, *2015 Freedom of Information Act Report to the Attorney General of the United States* 13, tbls. VII.C(1)-(2) (Feb. 2016), https://go.usa.gov/xXQvf (hereinafter *2015 DHS FOIA Report*). Almost all (roughly 90%) of the requests processed in 2015 were categorized as "complex." *Id.* (1050 complex requests versus 145 simple requests). And the average processing time for those requests was 317 days, with the response time for roughly one out of every four of the requests exceeding 300 business days. *Id.* at 12-13, tbls. VII.B, VII.C(2).

Considered in that context, the time for which the nineteen requests in this case had been pending when Judicial Watch filed its suit (54 to 329 business days) is in step with the Secret Service's general handling of FOIA requests. Nor is the Secret Service some sort of conspicuous outlier among DHS components in its processing times. *See id.* at 12 tbl. VII.B. (Contrary to my colleagues' suggestion, Maj. Op. 22; Conc'g Op. 7-8, I do not necessarily assume that the requests in this case would be categorized as "complex," although almost all requests processed by the Secret Service were so classified. Rather, in identifying a suitable comparison point to help highlight that processing times of 54 to 329 days do not alone demonstrate a FOIA violation, it is appropriate to reference the average processing time for the largest group of requests for which there is available data, a group that makes up some 90% of all requests.)

Insofar as a FOIA requester can make out a viable policy-or-practice claim based solely on an agency's response times, then, Judicial Watch needed to allege something more than that: it submitted multiple FOIA requests, it filed suit when permitted by the statute, and its requests had been pending for some 54 to 329 business days at that time. Those allegations

are consistent with lawful conduct by the agency. They thus do not show a policy or practice of violating FOIA.

## C.

My colleagues in the majority nonetheless conclude that Judicial Watch's complaint states a valid policy-or-practice claim. They reason that the complaint "alleg[es] prolonged, unexplained delays in producing non-exempt records that could signal the agency has a policy or practice of ignoring FOIA's requirements." Maj. Op. 15.

Which of "FOIA's requirements" is the Secret Service plausibly alleged to have ignored? The only "requirement" on which the complaint relies is the default twenty-day period for processing a request. For the reasons already set out, however, the lapse of that period does not amount to an actionable violation of FOIA. If a breach of the twenty-day period were itself an actionable violation of FOIA, then a requester could immediately file suit after the twenty-day period passes—on day twenty one, for instance—and qualify right away for the entry of judgment in her favor and an award of attorneys' fees as a substantially-prevailing party. *See* 5 U.S.C. § 552(a)(4)(E). That cannot be correct.

As for my colleagues' assertion that Judicial Watch experienced "prolonged" delays in obtaining responsive records, Maj. Op. 15, there is no explanation of why the response periods alleged in the complaint might cross the line from permissible to unlawfully "prolonged." The lapse of the default twenty-day period, as we have seen, does not itself establish that the agency's response was unlawfully prolonged. If so, then at what point (beyond twenty days) did the agency's response times for the requests in this case become unlawfully prolonged? My colleagues do not say. And it is unclear how a district court is to make that determination.

For instance, are the response times "prolonged" because, for three of the nineteen requests in the case, more than 300 business days had elapsed as of the complaint without a determination by the agency? *See* Compl. Ex. A. The Secret Service was doing no worse on that metric with regard to the nineteen requests at issue than it did for all requests it processed in 2015. *See DHS 2015 FOIA Report* 13, tbl. VII.C(2) (253 of the roughly 1200 total responses took more than 300 business days to process). And if an agency violates FOIA whenever it takes more than 300 business days to respond to a request, Customs and Border Patrol would have violated the statute on that basis alone more than 20,000 times in 2015. *See id.*

In an effort to bolster the idea that the Secret Service's response times in this case at some point became unduly prolonged, my concurring colleague would infer that the requests at issue are "wholly straightforward." Conc'g Op. 8. The complaint, though, alleges (or says) nothing about the comparative complexity of Judicial Watch's requests. At any rate, regardless of whether the Secret Service ultimately prevails in its competing assertion that Judicial Watch's requests are "labor intensive," Campbell Decl. at ¶ 11 (D.D.C. Mar. 18, 2016), ECF No. 16-1, neither the concurring opinion nor the court's opinion identifies when (beyond twenty days) response times become sufficiently "prolonged" such that the time periods alleged in a complaint alone are enough to make out a policy-or-practice claim.

In addition to asserting that the Secret Service's response times were unduly "prolonged," my colleagues also say that the response times were "unexplained." Maj. Op. 15. In that regard, my colleagues presumably rely on Judicial Watch's indication that, for a number of the requests in the case, the Secret Service made no communication to Judicial Watch beyond giving a tracking number. *See* Compl. ¶ 11 & Ex. A.

But the purpose of requiring an agency to give an "individualized tracking number" for requests that will take more than ten days to process is to arm the requester with an efficient means of obtaining "information about the status of [her] request," including an estimated date on which the agency will finish processing the request. 5 U.S.C. § 552(a)(7)(B). That is an important form of communication by the agency to the requester, and there is no indication that it was unavailable to Judicial Watch (or any allegation that it was somehow deficient).

If a particular request implicates one of FOIA's three enumerated "unusual circumstances" and the agency will take more than thirty business days to process it, the statute calls for the agency to give the requester an opportunity either to limit the request's scope or to arrange for an alternative timeframe for processing it. *Id.* § 552(a)(6)(B)(ii); *see* Conc'g Op. 5. But the requirement to engage in that dialogue arises only if one of the enumerated "unusual circumstances" exists. And there is no suggestion by Judicial Watch—much less any allegation in the complaint—that any of those circumstances might exist in this case (or, for that matter, that the agency fell short in any resulting obligation to initiate the contemplated dialogue).

My colleagues, finally, assume that the Secret Service has a practice of responding to Judicial Watch's requests only "after it has filed a lawsuit." Maj. Op. 14. "[O]nly at that point," my colleagues submit, "has the Secret Service conducted a search to determine whether records can be made available or are exempt from disclosure, or engaged in consultations with Judicial Watch." *Id.*

I assume it would violate FOIA for an agency to adhere to a practice of refusing to process a request unless the requester brings a lawsuit. I do not read the complaint to allege that the

Secret Service has any such policy, however. To be sure, the complaint references five prior cases in which the Secret Service produced records after Judicial Watch filed suit, and the agency in this case produced records responsive to the nineteen requests after Judicial Watch brought this action. *See* Compl. ¶¶ 7, 9, 14. But the fact that the agency eventually produced records *after* a lawsuit of course hardly means that it produced the records only *because* of the lawsuit, much less that it did *no work at all* to process the request until the suit was filed. *See Iqbal*, 556 U.S. at 680-82.

Indeed, assuming (as we must) that the Secret Service gave Judicial Watch a tracking number upon receiving the requests, *see* Compl. ¶ 10, the agency also would have "provide[d] information about the status of [the] request[s]" including an "estimated date" by which it would "complete action" on them, 5 U.S.C. § 552(a)(7)(B). That means the agency necessarily would have to work on the requests regardless of any (as yet unfiled) suit. The complaint itself thus negates any notion that the agency did no work on the requests until Judicial Watch filed suit.

The complaint therefore does not allege—and at least does not plausibly allege—that it is the Secret Service's policy to withhold processing or production of documents unless the requester sues: to say that documents were produced after a suit is not to say that there would have been no processing or production absent the suit. *Cf. Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 556-57 (2007) (while parallel conduct may be consistent with an illicit agreement, allegations about parallel conduct do not substantiate otherwise conclusory allegation of illicit agreement). Judicial Watch in fact conceded in the district court that the time taken by the agency to process the requests could have been due to a "host of causes," including

agency backlog.  Pl.'s Opp'n to Mot. J. on Pldgs. 6-7 (D.D.C. Mar. 12, 2016), ECF No. 14.

My colleagues reason that, regardless of whether the Service Service's response times are caused by agency recalcitrance or justifiable backlog, the delay has the effect of making it a "practical requirement" for Judicial Watch to sue in order to obtain records.  Maj. Op. 15.  But the Secret Service's conduct, even assuming the truth of the allegations in the complaint, has not required Judicial Watch to sue.

Rather, the statute affords requesters a choice:  if twenty days comes and goes without a determination, the requester may check the tracking information and decide to wait until the estimated completion date arrives, or she may choose to involve a court in an effort to set a different timeline for production.  That is how the statute is designed to work.  And nothing in the complaint suggests that the process did not work that way here.  The remedial process, along with the other provisions of the statute, aim to advance FOIA's ultimate mandate of prompt production of non-exempt records.  An agency does not violate that mandate when the statutorily-prescribed process works as it was supposed to.

\* \* \* \* \*

The evident result of the court's holding today is that any requester who alleges that she made more than one request for records, that she received no determination within twenty days, and that she obtained no records before suing, can state a policy or practice claim based on agency delay.  That would be so even though the agency may be well on its way to production, and even though there is no plausible allegation of agency recalcitrance.  In any such instance, disclosure of the requested records in accordance with a court-ordered schedule would not moot the case.  Rather, a district court would be charged with

examining how "an agency has organized its records management systems" and "monitor[ing] when necessary an agency's progress in adjusting its records management systems." Maj. Op. 22. That holding implicates not only the Secret Service's handling of the requests in this case, but also the processes of numerous governmental agencies who routinely take longer than twenty days to process requests given the practical impossibility of invariably meeting that timeframe. *See CREW*, 711 F.3d at 189.

In my view, neither the terms, structure, nor purpose of FOIA demands that result. I of course do not take lightly FOIA's highly important mandate that agencies promptly disclose non-exempt records. Nor do I discount the possibility that various agencies are not processing FOIA requests as quickly as they might. The annual reports required by Congress presumably would shed light on poorly performing agencies. FOIA also provides for an investigatory proceeding by the Office of Special Counsel whenever a court issues written findings that "circumstances surrounding [an agency's] withholding raise questions whether agency personnel acted arbitrarily or capriciously." 5 U.S.C. § 552(a)(4)(F)(i). And if an agency has a practice of unlawfully withholding the disclosure of responsive records—say, by persistently invoking an inapplicable exemption—it will be subject to an injunction barring the practice. *See Payne*, 837 F.2d at 490-92.

In this case, however, the Secret Service's actions, as alleged in the complaint, do not reflect a policy or practice of violating FOIA. Rather, the allegations are consistent with lawful conduct on the agency's part. As a result, the case became moot when the agency finished processing the requests and disclosed responsive documents pursuant to the schedule ordered by the district court. I thus respectfully dissent from my colleagues' disposition of this appeal.